856 So.2d 875 (2001)
Melvin Gene HODGES
v.
STATE.
CR-98-1988.
Court of Criminal Appeals of Alabama.
March 30, 2001.
Opinion on Return to Remand October 26, 2001.
Rehearing Denied December 14, 2001.
*887 Floyd L. Likins, Jr., Opelika, for appellant.
William H. Pryor, Jr., atty. gen., and James R. Houts and A. Vernon Barnett IV, asst. attys. gen., for appellee.
COBB, Judge.
Melvin Gene Hodges was convicted of murdering Beth Seaton during the course of a robbery, a violation of § 13A-5-40(a)(2), Ala.Code 1975. The jury, by a vote of 8 to 4, recommended that Hodges be sentenced to life imprisonment without the possibility of parole. The trial court did not follow the jury's recommendation; it sentenced Hodges to death by electrocution. See § 13A-5-47(e), Ala.Code 1975.[1]
Because we are remanding this case based on errors in the trial court's sentencing order, we will not address in this opinion most of the issues Hodges raises on appeal.
The State conceded, both in brief and during oral argument before this Court, that this case must be remanded to the trial court for that court to correct its sentencing order. The trial court, in determining the aggravating circumstances that were presented by the facts in this *888 case, erroneously applied as an aggravating circumstance that the murder was committed for pecuniary gain. We will also take this opportunity to address other deficiencies in the trial court's sentencing order. If the trial court on remand, after weighing the mitigating circumstances and the aggravating circumstances, determines that a sentence of life without parole is appropriate, then this Court need not apply a plain-error review to the issues raised on appeal.
The sentencing order reads as follows:
"Pursuant to the requirements of Code of Alabama Section 13A-5-47, the Court makes the following specific findings of fact relating to the aggravating circumstances set forth in Section 13A-5-49:
"(1) The capital offense was not committed by a person under sentence of imprisonment;
"(2) The defendant was not previously convicted of another capital offense or a felony involving the use or threat of violence to the person;
"(3) The defendant did not knowingly create a great risk of death to many persons;
"(4) The capital offense was committed while the defendant was engaged, or was an accomplice in, the commission of a robbery and a kidnapping;
"(5) The capital offense was not committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody;
"(6) The capital offense was committed for pecuniary gain;
"(7) The capital offense was not committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws;
"(8) The capital offense was especially heinous, atrocious, and cruel compared to other capital offenses.
"Pursuant to the requirements of Code of Alabama Section 13A-5-47, the Court makes the following findings with respect to the statutory mitigating circumstances set forth in Section 13A-5-51:
"(1) The evidence indicates and the Court finds that the defendant has a significant history of prior criminal activity.
"(2) The capital offense was not committed while the defendant was under the influence of extreme mental or emotional disturbance.
"(3) The victim was not a participant in the defendant's conduct or consented to it.
"(4) The defendant was an accomplice in the capital offense committed by the defendant and another person but his participation was not relatively minor.
"(5) The defendant did not act under duress or under the substantial domination of another person.
"(6) The capacity of defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was not substantially impaired.
"(7) The court finds that the evidence indicates that the defendant was approximately 29 years of age at the time of this crime.
"In addition to the above-enumerated mitigating circumstances, the defendant has been given the opportunity to present any other evidence of mitigating circumstances. The Court does not find that there were any other significant *889 mitigating circumstances presented by the defendant."
(R. 877-78.)
The trial court found, as aggravating circumstances, that the murder was committed during the course of a robbery and a kidnapping, that the murder was committed for pecuniary gain, and that the murder was especially heinous, atrocious, or cruel as compared to other capital offenses. The trial court found no statutory mitigating circumstances and no "significant" nonstatutory mitigating circumstances.
A review of the trial court's order shows that the court failed to make specific findings concerning each aggravating circumstance, each statutory mitigating circumstance, and any nonstatutory mitigating circumstances. Such findings are mandated by § 13A-5-47(d), and are necessary for this court to review the sufficiency of the trial court's order fixing Hodges's sentence at death. Slaton v. State, 680 So.2d 879 (Ala.Crim.App.1995), aff'd, 680 So.2d 909 (Ala.1996), cert. denied, 519 U.S. 1079, 117 S.Ct. 742, 136 L.Ed.2d 680 (1997). Section 13A-5-47(d) states, in part:
"Based upon the evidence presented at trial, the evidence presented during the sentence hearing, and the pre-sentence investigation report and any evidence submitted in connection with it, the trial court shall enter specific written findings concerning the existence or nonexistence of each aggravating circumstance enumerated in Section 13A-5-49, each mitigating circumstance enumerated in Section 13A-5-51, and any additional mitigating circumstances pursuant to Section 13A-5-52."
This section directs the trial court to make specific findings concerning the evidence it relied on in determining the aggravating circumstances and the mitigating circumstances. These findings are critical in a case such as this one, where the trial court chose to override the jury's recommendation of life imprisonment and sentenced the convicted capital offender to death. To aid the trial court in correcting its sentencing order we will address some of the arguments Hodges makes in his brief to this Court.

I.
Hodges argues that the trial court could not lawfully apply the aggravating circumstance found in § 13A-5-49(4)the capital offense was committed during the course of a rape, robbery, burglary, or kidnappingtwice to the facts in this case, that is, the court could not count robbery and kidnapping as two aggravating circumstances. This Court has held otherwise. If the actions committed during the course of the murder support the finding that more than one of the enumerated underlying felonies was committed, then a trial court may apply § 13A-5-49(4) more than once. As we stated in Stewart v. State, 730 So.2d 1203 (Ala.Crim.App.1997), aff'd, 730 So.2d 1246 (Ala.), cert. denied, 528 U.S. 846, 120 S.Ct. 119, 145 L.Ed.2d 101 (1999):
"We hold that the aggravating circumstance enumerated in § 13A-5-49(4) may apply more than once if the accused murders another while committing any variation of the four enumerated felonies contained in § 13A-5-49(4), Code of Alabama 1975. The appellant committed the murder during the course of committing two felonies: burglary and kidnapping. The fact that § 13A-5-49(4) lists four different felonies under the single heading of aggravating circumstances does not mean that this circumstance could be applied only once in any given case. To hold otherwise would be to say that a person could commit a murder *890 during the course of committing any number of the felonies enumerated in § 13A-5-49(4) and face no additional consequences at the penalty phase and in fact be considered to have committed only one of the felonies contained in this section. This was not the intent of the legislature. The legislature's use of the words or in the above section supports this holding.
"Furthermore, § 13A-5-48 states:

"`The process described in Sections 13A-5-46(e)(2), 13A-5-46(e)(3) and Section 13A-5-47(e) of weighing the aggravating and mitigating circumstances to determine the sentence shall not be defined to mean a mere tallying of aggravating and mitigating circumstances for the purpose of numerical comparison. Instead, it shall be defined to mean a process by which circumstances relevant to sentence are marshalled and considered in an organized fashion for the purpose of determining whether the proper sentence in view of all the relevant circumstances in an individual case is life imprisonment without parole or death.'
"(Emphasis added [in Stewart].) Our conclusion is further supported by the above Code section, which states that the weighing of the aggravating and the mitigating circumstances is not a mere tallying of numerical numbers and comparing those numbers to see which is greater."
730 So.2d at 1212.

A. Robbery as Aggravating Circumstance

The trial court found that the murder was committed during the course of a robbery. This aggravating circumstance was proven beyond a reasonable doubt based on the jury's verdict that found Hodges guilty of robbery-murder. Although robbery is an element of the capital offense, the application of this felony as an aggravating circumstance is specifically provided for in § 13A-5-50 and has been approved by this Court. This section states:
"The fact that a particular capital offense as defined in Section 13A-5-40(a) necessarily includes one or more aggravating circumstances as specified in Section 13A-5-49 shall not be construed to preclude the finding and consideration of that relevant circumstance or circumstances in determining sentence."
See also Smith v. State, 756 So.2d 892 (Ala.Crim.App.1998), aff'd, 756 So.2d 957 (Ala.), cert. denied, 531 U.S. 830, 121 S.Ct. 82, 148 L.Ed.2d 44 (2000).
However, the trial court is directed to state its findings concerning this aggravating circumstance.

B. Kidnapping as Aggravating Circumstance

The trial court also found that the murder was committed during the course of a kidnapping. However, the trial court failed to make findings as to the application of this aggravating circumstance. Hodges was not charged with murder committed during the course of a kidnapping; thus, we do not have a jury verdict that supports the application of this aggravating circumstance beyond a reasonable doubt.[2] There appears to be ample evidence in the record that the victim was kidnapped, but the trial court failed to state the evidence to support this finding. *891 A finding of fact concerning this circumstance is essential for this Court to be able to review this issue.

II.
Hodges argues that the trial court erred in finding as an aggravating circumstance that the murder was committed for pecuniary gain. The State concedes that the trial court erred in making this finding.
The Alabama Supreme Court has held that when a trial court evaluates the aggravating circumstances applicable to a defendant convicted of robbery-murder, a court may not consider the fact that money was taken from the victim as constituting the aggravating circumstance that the murder was committed for pecuniary gain. Our Supreme Court in Cook v. State, 369 So.2d 1251, 1256 (Ala.1978), opinion on remand, 369 So.2d 1260 (Ala.Crim.App.1979), after remand, 384 So.2d 1158 (Ala.Crim. App.), cert. denied, 384 So.2d 1161 (Ala. 1980), stated:
"At Cook's sentencing hearing the trial judge found that two aggravating circumstances were present: (4)a capital felony committed in the course of a robbery, and (6)a capital felony committed for pecuniary gain. In so finding we feel that the learned trial judge misconstrued the latter aggravating circumstance, in effect condemning Cook twice for the same culpable actstealing money. Subsection 6 would, of course, cover a variety of crimes committed with the hope of financial benefit, ranging from `murder-for-hire' to an heir killing his benefactor to gain his inheritance. But we do not think it appropriate to apply this aggravating circumstance to situations already condemned under subsection 4 which by definition involve an attempt at pecuniary gain. Thus, to avoid repetition, subsection 6 should not be applied to a robbery. The trial court erred in considering it and including it in the findings of fact."[3]
This Court has remanded cases when the trial court applied the aggravating circumstance of murder for pecuniary gain to a robbery-murder. See Bufford v. State, 382 So.2d 1162 (Ala.Crim.App.1980), writ denied, 382 So.2d 1175 (Ala.1980); Lewis v. State, 380 So.2d 970 (Ala.Crim.App. 1979). However, this court has approved the use of this aggravating circumstance when the crime charged was not robbery-murder. See Bryant v. State, [Ms. CR-98-0023, November 19, 1999] ___ So.2d ___ (Ala.Crim.App.1999) (aggravating circumstance that murder was committed for pecuniary gain correctly applied when appellant convicted of kidnapping-murder).
The aggravating circumstance that the murder was committed for pecuniary gain was erroneously applied in this case. For this reason the trial court must omit this aggravating circumstance from its consideration and then reweigh the aggravating circumstances and the mitigating circumstances. See § 13A-5-47(e), Ala.Code 1975.

III.
Hodges argues that the trial court erred in finding that the murder was especially heinous, atrocious, or cruel as compared to other capital offenses. The trial court failed to make any findings concerning this aggravating circumstance. Before this Court can review the merits of this contention we must have the specific findings of fact that support the application of this aggravating circumstance. Waldrop v. State, [Ms. CR-98-2316, June 30, 2000] ___ So.2d ___ (Ala.Crim.App.), opinion on *892 remand, [Ms. CR-98-2316, December 1, 2000] ___ So.2d ___ (Ala.Crim.App.2000). We call the trial court's attention to Ex parte Kyzer, 399 So.2d 330 (Ala.1981).
By remanding this case for the trial court to make findings as to this issue, we do not wish to imply that the evidence was not sufficient to support a finding that this aggravating circumstance existed. There appears to be adequate evidence in the record to support the consideration of this aggravating circumstance. Evidence was presented that Hodges beat the victim with his fists and a pistol, choked her, and threw her on the side of a road where he then repeatedly ran over her with her own vehicle. However, the trial court must make specific findings as to why it believes this aggravating circumstance was present in this case.

IV.
In regard to the trial court's findings on statutory mitigating evidence, we specifically note that the trial court failed to provide this Court with the basis for its finding that Hodges had a criminal history that negated the mitigating circumstance of no significant history of prior criminal activity. The court did not state what convictions it considered when reaching this conclusion. The presentence report does support the trial court's findings; however, some of the offenses were juvenile adjudications and two offenses were nol-prossed. Juvenile adjudications and nol-prossed charges may not be used to negate the statutory mitigating circumstance of no significant history of prior criminal activity. Only convictions can negate the consideration of this mitigating circumstance. See Freeman v. State, 651 So.2d 576 (Ala.Crim.App.1994).
The trial court is directed to make findings as to why it found that this mitigating circumstance was not present.

V.
Also, the trial court failed to make specific findings concerning the presence of any nonstatutory mitigating circumstances. We have held, "The court need not set out in its sentencing order each and every nonstatutory mitigating circumstance offered by the defendant; it merely needs to set out whether he found any nonstatutory mitigating circumstances, and if so, what those were." Slaton v. State, 680 So.2d at 907.
The trial court stated that it did "not find that there were any other significant mitigating circumstances presented by the defendant." This statement implies that the trial court found some nonstatutory mitigating evidence but it gave this evidence little weight.
Hodges's mother was the only witness to testify at the penalty phase.[4] She said that Hodges's father was physically abusive and that she left him when Hodges was two. She remarried shortly thereafter, she said, to a man that was verbally abusive to her. She left him when Hodges was about seven years of age. Mrs. Hodges further testified that she again remarried shortly thereafter. She said that this man abused drugs and that he was diagnosed as a paranoid schizophrenic. He would wake the kids up in the middle of the night, she testified, *893 and drill them about who was trying to kill him. Hodges left home when he was 17, she testified, to locate his biological father, who he had not seen since he was two years old. After meeting his father, Mrs. Hodges said, Melvin was upset and thereafter had little contact with his father.
The United States Supreme Court has recognized that a difficult family history is a mitigating circumstance that may be entitled to little or great weight depending on the circumstances of the case and the age of the defendant. See Eddings v. Oklahoma, 455 U.S. 104, 115, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), and McGautha v. California, 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971). This Court has repeatedly recognized that an individual's abusive or unstable upbringing is a nonstatutory mitigating circumstance. See Flowers v. State, 799 So.2d 966, 977 (Ala.Crim.App.2000); Smith v. State, 797 So.2d 503 (Ala.Crim.App.2000); Williams v. State, 783 So.2d 108 (Ala.Crim.App.2000) (Luther Jerome Williams); Williams v. State, 795 So.2d 753 (Ala.Crim.App.1999) (Marcus Bernard Williams); Thomas v. State, 766 So.2d 860 (Ala.Crim.App.1998), aff'd, 766 So.2d 975 (Ala.2000); Davis v. State, 718 So.2d 1148 (Ala.Crim.App.1997), aff'd, 718 So.2d 1166 (Ala.1998), cert. denied, 525 U.S. 1179, 119 S.Ct. 1117, 143 L.Ed.2d 112 (1999); Barbour v. State, 673 So.2d 461 (Ala.Crim.App.1994), aff'd. 673 So.2d 473 (Ala.1995), cert. denied, 518 U.S. 1020, 116 S.Ct. 2556, 135 L.Ed.2d 1074 (1996); Williams v. State, 627 So.2d 985 (Ala.Crim.App.1991), aff'd, 627 So.2d 999 (Ala.1993), cert. denied, 511 U.S. 1012, 114 S.Ct. 1387, 128 L.Ed.2d 61 (1994) (Herbert Williams, Jr.). Of course, the weight to attach to this nonstatutory mitigating circumstance is within the discretion of the trial court. See Bush v. State, 695 So.2d 70 (Ala.Crim.App.1995), aff'd, 695 So.2d 138 (Ala.), cert. denied, 522 U.S. 969, 118 S.Ct. 418, 139 L.Ed.2d 320 (1997).
The trial court must state what evidence it found to be nonstatutory mitigating evidence in order for this Court to review the sufficiency of the trial court's sentencing order.

VI.
The jury recommended, by a vote of 8 to 4, that Hodges be sentenced to life imprisonment without the possibility of parole. The trial court chose not to follow the jury's recommendation and sentenced Hodges to death by electrocution. The trial court, in its sentencing order, noted that it had considered the jury's recommendation. However, the court did not state its reasons for not following the jury's recommendation. The Alabama Supreme Court in Taylor v. State, 808 So.2d 1215, 1219 (Ala.2001), held that a judge must make specific findings as to his reasons for "giving the jury's recommendation the consideration he gave it." The court stated:
"Under Alabama's capital-sentencing procedure, the trial judge must make specific written findings regarding the existence or nonexistence of each aggravating circumstance and each mitigating circumstance offered by the parties. § 13A-5-47(d), Ala.Code 1975. In making these findings, the trial judge must consider a jury's recommendation of life imprisonment without parole. See § 13A-5-47(e), Ala.Code 1975 (`in [weighing the aggravating and mitigating circumstances] the trial court shall consider the recommendation of the jury contained in its advisory verdict'). Construing subsection (e) together with subsection (d), we conclude that the trial judge must state specific reasons for giving the jury's recommendation the consideration he gave it."
*894 The trial judge is therefore directed to make specific findings of fact as to why it gave the jury's recommendation the consideration he gave it. See Thomas.
For the reasons stated above, this case is remanded to the Circuit Court for Lee County for that court to correct its sentencing order to comply with § 13A-5-47(d). The Court is further directed to reweigh the aggravating circumstances and the mitigating circumstances once it has corrected its sentencing order to omit consideration of the aggravating circumstance of murder for pecuniary gain. Due return should be filed in this Court no later than 45 days from the date of this opinion.
REMANDED WITH DIRECTIONS.
McMILLAN, P.J., and BASCHAB, SHAW, and WISE, JJ., concur.

On Return to Remand
COBB, Judge.
Melvin Gene Hodges was convicted of murdering Elizabeth "Beth" Seaton during the course of a robbery, a violation of § 13A-5-40(a)(2), Ala.Code 1975. The jury, by a vote of 8 to 4, recommended that Hodges be sentenced to life imprisonment without the possibility of parole. The trial court did not follow the jury's recommendation; it sentenced Hodges to death by electrocution. On March 30, 2001, we remanded this case to the circuit court for that court to correct its sentencing order to delete consideration of an improperly applied aggravating circumstance and to correct other deficiencies. Hodges v. State, 856 So.2d 875 (Ala.Crim.App.2001). We further instructed the trial court to reweigh the aggravating circumstances and the mitigating circumstances after correcting its sentencing order. The trial court has complied with our directives and has again sentenced Hodges to death by electrocution.
We will now consider the remaining issues that we did not address in our previous opinion.
The State's evidence tended to show the following. On January 5, 1998, two hunters discovered the nude body of Beth Seaton on the side of County Road 26 in Macon County. The coroner testified that Seaton died as a result of a combination of blunt-force injuries to her head, neck, chest, and abdomen, the most significant being the crushing injuries to her chest and abdomen, which resulted from having been run over by a vehicle. Tire marks ran vertically up and down Seaton's back. A name tag from the Golden Corral Restaurant with Hodges's name on it was found near Seaton's body.
Hodges and Seaton were coworkers at the Golden Corral Restaurant in Opelika. Seaton was a supervisor, and one of her duties was to close the restaurant. Hodges was a crew leader at the restaurant. On January 5, 1998, Trina Eady, another employee at Golden Corral, and Hodges arrived to open the restaurant. The alarm system was deactivated and the safe was open. There was no evidence of a forced entry. They telephoned police.
An investigation led police to Marlo Murph.[1] Murph testified at trial that Hodges suggested robbing the Golden Corral. He said that Hodges told him that Sunday night was the best time because there would be a lot of money in the safe. Murph said that Hodges got the pistol used to murder Seaton from Greg Holstick. The two planned to get to the restaurant while Seaton was closing up. According *895 to Murph, their plans went awry. When they arrived at the restaurant they saw Seaton driving away in her van. They followed the van and were able to get Seaton to pull over. While Hodges was talking to her, Murph said, he entered the van and pointed a gun at her. The two then forced her to drive back to the Golden Corral and open the safe. Murph and Hodges then forced Seaton to drive her van around the area. Murph testified that Seaton sensed that something was going to happen; he stated that she started taking off her clothes and saying that she would have sex with them if they did not hurt her. They eventually made her pull the vehicle over. Murph testified that Hodges said that Seaton knew too much. Hodges then pulled Seaton out of the van and began hitting and choking her. Murph said that while Hodges was holding her, he hit Seaton with a pistol. Murph testified that when he realized what Hodges was going to do he walked away. He said that Hodges got into the driver's seat in Seaton's van and ran over Seaton about four times, back and forth. The two then left in Seaton's van. Murph said that they drove around for several minutes and Hodges realized that his Golden Corral name tag was missing. The two tried to return to where they had left the body, but they were lost and running out of gas. Murph said that he threw Seaton's purse out of the window near the rest area in Tuskegee and that they parked Seaton's van at Mount Olive Baptist Church. Hodges's clothes were covered in blood so he gave them to Murph to dispose of. Murph led police to where he had disposed of Hodges's clothes. Murph testified that Hodges gave him $2,500 for his part in the robbery/murder. (Murph had $1,427 in his possession at the time of his arrest.)
Kitt Porter, Hodges's aunt, testified that, on January 5, 1998, she drove Hodges to Tuskegee. She said that he told her that police had discovered his Golden Corral name tag at the murder scene. Porter testified that Hodges admitted to her that he had robbed and killed Seaton. He told her about the murderan account that corroborated Murph's account in almost all respects. Porter testified that Hodges told her that he gave $5,000 to Murph for his part in the robbery/murder.
Several witnesses also testified that the day after the robbery/murder Hodges had a large quantity of money. Hodges himself testified that he gave his girlfriend $600. Forensic evidence connected Hodges to the robbery/murder. A cigarette butt recovered from Seaton's van contained saliva, the DNA of which matched Hodges's. Also, at the time of Hodges's arrest he had blood on his watch and ring. Furthermore, blood found on the clothes that Murph had discarded for Hodges matched Seaton's DNA.
Hodges testified in his own defense and offered his own version of the facts surrounding Seaton's murder. Hodges testified that he orchestrated the robbery and enlisted the help of Craig Hicks, Greg Holstick, and Marlo Murph. Hodges testified that, on the night of the intended robbery, Hicks did not show up and they had to revise their plans. He said that he planned to be at his apartment so that he would not be implicated in the robbery. He said that he wondered what was taking so long and went across the street from the Golden Corral to see what was happening. Hodges further testified that after about one hour Greg Holstick returned and said that they had to get rid of Seaton because she knew them. (Hodges had previously introduced Holstick to Seaton.) Hodges said that Holstick gave him $600. Hodges said that he was not present at the time of the robbery or the murder and that he knew nothing about the murder. *896 He said that the State's witnesses were all lying.

Standard of Review
Hodges has been sentenced to death. Pursuant to Rule 45A, Ala.R.App.P., this court must review the record for any plain error. Rule 45A, Ala.R.App.P., provides:
"In all cases in which the death penalty has been imposed, the Court of Criminal Appeals shall notice any plain error or defect in the proceedings under review, whether or not brought to the attention of the trial court, and take appropriate appellate action by reason thereof, whenever such error has or probably has adversely affected the substantial right of the appellant."
We have stated the following concerning the plain-error standard of review:
"`Plain error' is error `so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceedings.' Ex parte Womack, 435 So.2d 766, 769 (Ala.), cert. denied, 464 U.S. 986, 104 S.Ct. 436, 78 L.Ed.2d 367 (1983), quoting United States v. Chaney, 662 F.2d 1148-1152 (5th Cir.1981). `To rise to the level of plain error, the claimed error must not only seriously affect a defendant's "substantial rights," but it must also have an unfair prejudicial impact on the jury's deliberations.' Hyde v. State, 778 So.2d 199, 209 (Ala.Crim.App.1998), aff'd, 778 So.2d 237 (Ala.2000). This court has recognized that `"the plain error exception to the contemporaneous-objection rule is to be `used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.' "` Burton v. State, 651 So.2d 641, 645 (Ala.Crim.App.1993), aff'd, 651 So.2d 659 (Ala.1994), cert. denied, 514 U.S. 1115, 115 S.Ct. 1973, 131 L.Ed.2d 862 (1995), quoting United States v. Young, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985), quoting, in turn, United States v. Frady, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982)."
Reeves v. State, 807 So.2d 18, 27 (Ala.Crim. App.2000).

Guilt-Phase Issues

I.
In Issue V of his brief to this Court, Hodges argues that Lee County's method of selecting grand jury forepersons is racially discriminatory. He argues, "If a defendant proves that the selection process of grand jury forepersons in a county has been characterized by a history of racial discrimination, this amounts to a violation of the defendant's constitutional right to equal protection." (Hodges's brief at page 59.)
Hodges was originally indicted by the Lee County winter term 1998 grand jury. After he presented evidence concerning racial discrimination in the selection of grand jury forepersons, Hodges was reindicted by the Lee County winter term 1999 grand jury. This grand jury had a black foreman; 5 other blacks served on the grand jury, which had a total of 18 members. (C. 476.)
Even if there was evidence of discrimination in the selection of a grand jury foreperson, there are no grounds for invalidating the indictment because of the ministerial nature of the foreperson's role in the grand jury proceedings.[2]See Pace v. *897 State, 714 So.2d 332 (Ala.1997). As the Alabama Supreme Court stated in Ex parte Drinkard, 777 So.2d 295, 305 (Ala. 2000):
"This Court in Pace, examined the role of the grand-jury foreperson that was discussed in Rose v. Mitchell [, 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979)] and compared that to the role of the grand-jury foreperson in Alabama:
"`In Rose, the Supreme Court noted that Tennessee grand jury forepersons, in addition to the ministerial functions of presiding over the grand jury, administering oaths to witnesses, and signing indictments and subpoenas, had a substantive duty to assist the district attorney in the investigation of crimes. 443 U.S. at 548, n. 2, 99 S.Ct. 2993. In contrast, Alabama grand jury forepersons have no duty to assist the district attorney in the investigation of crimes and are generally limited to merely reporting grand jury votes and signing the appropriate paperwork prepared by the court or the district attorney. Rule 12.5, Ala. R.Cr.P.
"`... Unlike the dominant and authoritative role the Tennessee grand jury foreperson played in Rose, the role of the grand jury foreperson in this case was to perform merely ministerial tasks. The Tennessee grand jury foreperson in Rose had a virtual veto power over the indictment process because under Tennessee law the failure of the foreperson to sign an indictment renders the indictment "fatally defective." 443 U.S. at 548, n. 2, 99 S.Ct. 2993. In contrast, the role of a grand jury foreperson in Alabama is so ministerial that even his or her failure to participate in deliberations and to vote with the panel is not fatal to the indictment.... Noah [v. State, 494 So.2d 870 (Ala.Crim.App.1986)].'
"Pace, 714 So.2d at 338.
"This Court concluded in Pace that `[i]n this state, the function of a grand jury foreperson is almost entirely ministerial in nature, very similar to that of a federal grand jury foreperson.' 714 So.2d at 336. Because the grand jury itself was properly constituted and the grand-jury foreperson in Alabama performs a ministerial function similar to that of the foreperson in the federal court, we conclude that the grand jury in Drinkard's case was not tainted to the point that Drinkard's due process rights were infringed."
Hodges's claim that his equal protection rights were violated is moot because he was reindicted by a grand jury that had a black foreperson. Moreover, even if Lee County's method of selecting a grand jury foreperson is discriminatory, based on the holding in Pace, no constitutional rights of Hodges were violated, nor is the indictment due to be set aside.

II.
In Issue XXI of his brief to this Court, Hodges argues that the trial judge erred *898 in failing to recuse himself from the case because, he argues, the judge was biased against him. Specifically, Hodges argues that the trial judge showed his bias by denying many of his motions, by correcting his counsel during the trial, and ultimately by overriding the jury's recommendation.
"`All judges are presumed to be impartial and unbiased. Ex parte Cotton, 638 So.2d 870 (Ala.1994). "The burden is on the party seeking recusal to present evidence establishing the existence of bias or prejudice."` Ex parte Grayson, 665 So.2d 986, 987 (Ala.Cr.App.1995)." Ex parte Knotts, 716 So.2d 262 (Ala.Crim.App. 1998).
"The burden is on the party seeking recusal to present evidence establishing the existence of bias or prejudice. Otwell v. Bryant, 497 So.2d 111, 119 (Ala. 1986). Prejudice on the part of a judge is not presumed. Hartman v. Board of Trustees, 436 So.2d 837 (Ala.1983); Duncan v. Sherrill, 341 So.2d 946 (Ala. 1977); Ex parte Rives, 511 So.2d 514, 517 (Ala.Civ.App.1986). `"[T]he law will not suppose a possibility of bias or favor in a judge who is already sworn to administer impartial justice and whose authority greatly depends upon that presumption and idea."` Ex parte Balogun, 516 So.2d 606, 609 (Ala.1987), quoting Fulton v. Longshore, 156 Ala. 611, 46 So. 989 (1908). Any disqualifying prejudice or bias as to a party must be of a personal nature and must stem from an extrajudicial source. Hartman v. Board of Trustees of the University of Alabama, 436 So.2d 837 (Ala.1983); Reach v. Reach, 378 So.2d 1115 (Ala. Civ.App.1979). Thus,
"`"[T]he disqualifying prejudice of a judge does not necessarily comprehend every bias, partiality, or prejudice which he may entertain with reference to the case, but must be of a character, calculated to impair seriously his impartiality and sway his judgment, and must be strong enough to overthrow the presumption of his integrity."'

"Ross v. Luton, 456 So.2d [249] at 254 [(Ala.1984)], quoting Duncan v. Sherrill, 341 So.2d 946, 947 (Ala.1977), quoting 48 C.J.S. Judges § 82(b)."
Ex parte Melof, 553 So.2d 554, 557 (Ala. 1989). See also Ex parte Cotton, 638 So.2d 870 (Ala.1994).
Hodges failed to meet his burden of showing that the trial court was biased or prejudiced against him. We have often stated that "`[a]dverse rulings during the course of the proceedings are not by themselves sufficient to establish bias and prejudice.' Hartman v. Board of Trustees of the University of Alabama, 436 So.2d 837, 841 (Ala.1983)." Thomas v. State, 611 So.2d 416, 419 (Ala.Crim.App. 1992).
"`The bias or prejudice necessary to disqualify a judge "`must stem from an extrajudicial source and must result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.'" Kitchens v. Maye, 623 So.2d 1082, 1086 (Ala. 1993) (quoting United States v. Grinnell Corp., 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778, 793 (1966)) (emphasis added in Kitchens). A trial court's denial of a motion to recuse will not be reversed on appeal "unless clear evidence of bias is shown." Adkins v. State, 600 So.2d [1054] at 1062 [(Ala.Cr. App.1990), remanded on other grounds, 600 So.2d 1067 (Ala.1992)].'"
Ex parte Knotts, 716 So.2d 262, 267 (Ala. Crim.App.1998) (quoting Riddle v. State, 669 So.2d 1014, 1019 (Ala.Crim.App.1994)).
We have reviewed the record and find no evidence of any bias on the part of the *899 trial court. On occasion, the trial court did exhibit some impatience with the defense because of the approximately 70 motions that Hodges's lawyers filed on his behalf, but this impatience is insufficient evidence of bias. Moreover, the trial court detailed its reasons for overriding the jury's recommendation. There is no evidence that the trial court, without reason or as a result of bias, chose to sentence Hodges to death. The record contains no clear evidence of bias in this case. Therefore, the trial court did not abuse its discretion in denying the motion to recuse.

III.
In Issue XIV of his appellate brief, Hodges argues that § 13A-5-54, Ala.Code 1975, which addresses the qualifications of appointed counsel in a capital case, should apply to both attorneys appointed to represent him. Hodges was represented at trial by attorneys Floyd L. Likins[3] and W. Larry Ray. On appeal, Hodges argues that Ray did not have the experience mandated in § 13A-5-54. Hodges does not challenge Likins's experience because his experience met the statutory requirements in § 13A-5-54.
Initially, we observe that no objection was made; therefore, we review for plain error. Rule 45A, Ala.R.App.P.
Section 13A-5-54 provides as follows:
"Each person indicted for an offense punishable under the provisions of this article who is not able to afford legal counsel must be provided with court appointed counsel having no less than five years' prior experience in the active practice of criminal law."
In Parker v. State, 587 So.2d 1072 (Ala. Crim.App.1991), we held that when a person accused of a capital offense has one attorney whose experience meets that required in § 13A-5-54, the requirements of that section have been satisfied.
Moreover, Ray stated that he had 17 years' experience in the practice of law and that 5% of his practice consisted of criminal cases. There is absolutely no evidence that either attorney was unqualified to represent Hodges. No error or plain error occurred.

IV.
In Issue XXIII of his appellate brief, Hodges argues that his death sentence is due to be reversed because, he argues, Alabama's statutory compensation scheme for court-appointed attorneys is "deplorable and unconstitutional." He contends that the limit of $1,000 for out-of-court work in each phase of a capital case results in the ineffective assistance of counsel. See § 15-21-21, Ala.Code 1975. This statute has been amended since Hodges was tried.
We have addressed this issue on many occasions and have found that § 15-21-21 is not unconstitutional. As we stated in Broadnax v. State, 825 So.2d 134 (Ala. Crim.App.2000):
"Upon considering the constitutionality of the Alabama statute in question here, we reiterate our holding in Boyd v. State, 715 So.2d 825 (Ala.Cr.App.1997), where Boyd raised an identical issue:
"`This court has previously rejected similar claims and adheres to its prior decisions on this matter. Smith v. State, 581 So.2d 497, 526-29 (Ala.Cr. App.1990), rev'd on other grounds, 581 So.2d 531 (Ala.1991); May v. State, 672 So.2d 1310, 1311 (Ala.1995).'
"715 So.2d at 850. See also Burgess v. State, 723 So.2d 742, 756 (Ala.Cr.App. 1997), aff'd, 723 So.2d 770 (Ala.1998), *900 cert. denied, 526 U.S. 1052, 119 S.Ct. 1360, 143 L.Ed.2d 521 (1999); Johnson v. State, 620 So.2d 679 (Ala.Cr.App. 1992), rev'd on other grounds, 620 So.2d 709 (Ala.1993), cert. denied, 510 U.S. 905, 114 S.Ct. 285, 126 L.Ed.2d 235 (1993). Therefore, in accordance with our previous decisions, we find Broadnax's contention to be without merit.
"`It should be noted that the Alabama Legislature recently passed the "Investment in Justice Act of 1999," and, in pertinent part, that Act amended § 15-12-21[, Ala.Code 1975]. Under the new Act, the rate of compensation for attorneys representing indigent criminal defendants is increased to $50 per hour for in-court time and $30 per hour for out-of-court time, with no limit on compensation for an attorney in a case involving a capital offense. Moreover, effective October 1, 2000, the hourly rate increases to $40 per hour for out-of-court time and $60 per hour for in-court time.'"
Broadnax v. State, 825 So.2d at 206, quoting in part McWhorter v. State, 781 So.2d 257, 306 (Ala.Crim.App.1999), aff'd, 781 So.2d 330 (Ala.2000), cert. denied, 532 U.S. 976, 121 S.Ct. 1612, 149 L.Ed.2d 476 (2001).

V.
In Issue XI of his appellate brief, Hodges argues that the State violated the court's discovery order when it failed to give the defense tire impressions and transparencies that forensic scientist Craig Bailey used when examining the tire marks on Seaton's back. Bailey testified that the tire marks on Seaton's back were similar to the rear tire tread of Seaton's van.
The record reflects that two days before trial the prosecution disclosed to the defense the substance of Bailey's testimony. The defense was given a copy of Bailey's report. The report referenced transparencies Bailey used that were taken from photographs of the tire tracks on Seaton's body and tire impressions made from the rear tires of Seaton's van. Defense counsel objected to Bailey's testimony. The following occurred:
"The Court: This report of Mr. Bailey dated June 9, you say you were provided that on June 9, Mr. Ray?
"Mr. Ray: Yes, sir.
"The Court: Well, I think it's incumbent on you to read these kinds of things, and if there is something referred to there that you have not seen, then you need to make an effort to see it. When the Department of Forensic Sciences has these things there, they are certainly available for examination by defense attorneys and you have some obligation, it seems to me, to look at them. I am going to give you a chance to look at them right now while the jury is out, and then we will see what we are going to do from that point on."
(R. 947-48.) The record shows that the prosecutor also stated that he had informed the defense attorney, when he gave them a copy of Bailey's report, that "there was evidence in the control of the people in theForensic Sciences that they were ... perfectly willing for them to go see whatever we had." (R. 944-45). Bailey's report was provided and the evidence he evaluated was available to Hodges. As the dialogue indicates, Hodges never requested access to the now-challenged evidence. Thus, there was no discovery violation.
Moreover, it was undisputed at trial that Seaton had been run over by her own vehicle. The undercarriage of Seaton's van was spattered with blood. The identity of the vehicle used to run over the victim was not an issue. Defense counsel *901 did not offer any alternative scenario to explain the cause of Seaton's death. Hodges himself testified that he had no part in the murder and that he was not present when she was killed. Therefore, even if error occurred, it would have been, at most, harmless. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

VI.
In Issue XV of his brief, Hodges argues that the trial court's failure to exclude Detective Ronald Robertson, a witness, from the courtroom during the trial resulted in Hodges's being denied a fair trial.
The record reflects that the trial court granted the defense's motion to invoke "the Rule"a rule that excludes potential witnesses from the courtroom during the trial. However, the following occurred:
"Ms. Meek [prosecutor]: Would it be okay if Detective Robertson sits here and finds exhibits for me as we go?
"The Court: Yes.
"Ms. Meek: We will be handling a lot this morning.
"The Court: The Court will come to order. Is everybody ready to go?
"Mr. Ray [defense counsel]: Yes, sir.
"Mr. Abbett [prosecutor]: Yes, sir."
(R. 798.)
There was no objection to Detective Robertson's presence in the courtroom. Therefore, we evaluate this issue only for plain error. Rule 45A, Ala.R.App.P.
Rule 615, Ala.R.Evid., governs the exclusion of witnesses and specifically states, in part:
"At the request of a party the court may order witnesses excluded so that they cannot hear the testimony of other witnesses and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause, or (4) a victim of a criminal offense or the representative of a victim who is unable to attend, when the representative has been selected by the victim, the victim's guardian, or the victim's family."
See also Rule 9.3(a), Ala.R.Crim.P.
In Alabama, whether to exclude witnesses is traditionally a decision left to the sound discretion of the trial court. As we stated in Taylor v. State, 808 So.2d 1148 (Ala.Crim.App.2000), aff'd, 808 So.2d 1215 (Ala.2001):
"`Rule 9.3(a), Ala.R.Crim.P., authorizes the trial court to exclude potential witnesses from the courtroom prior to or during proceedings. The Committee Comments to Rule 9.3(a) state that "the power to exclude and separate witnesses is entirely a matter of discretion with the trial court." The Comments cite Teague v. State, 245 Ala. 339, 16 So.2d 877 (1944); and Beddow v. State, 39 Ala.App. 29, 96 So.2d 175 (1956), cert. denied, 266 Ala. 694, 96 So.2d 178 (1957), cert. denied, 355 U.S. 930, 78 S.Ct. 412, 2 L.Ed.2d 414 (1958).
"`... "Alabama appellate courts have time and again refused to hold it an abuse of discretion on the part of a trial court to allow a sheriff, police chief, or similarly situated person who will later testify to remain in the courtroom during trial." Ex parte Lawhorn, 581 So.2d 1179, 1181 (Ala.), cert. denied, 502 U.S. 970, 112 S.Ct. 445, 116 L.Ed.2d 463 (1991) (citing several Alabama cases holding to same effect.)'
*902 "Weaver v. State, 710 So.2d 480, 484 (Ala.Cr.App.1997).
"Rule 615, Ala.R.Evid., also gives the trial court the discretion of whether to exclude witnesses from the courtroom. However, the Rule 615 Advisory Committee Notes state that `rarely should the court exercise its power to exclude the testimony of a witness who has violated the court's sequestration order.' The trial court's decision as to whether the witness will be permitted to testify is not subject to review. Whitehead v. State, 777 So.2d 781 (Ala.Cr.App.1999)."
Taylor v. State, 808 So.2d at 1195.
The trial court properly exercised its discretion in excluding Detective Ronald Robertson from "the Rule." There is no plain error here.

VII.
In Issue VI of his brief to this Court, Hodges argues that the trial court deprived him of a fair trial by its rulings regarding the jury's organization and voir dire.

A.
Hodges argues that the trial court denied him the opportunity to question the prospective jurors about whether they would give more credence to a police officer's testimony than a lay person's testimony. Hodges argues in brief:
"The only reliable way [to] uncover such bias is for the court to ask the venire if anyone would be inclined to give more credibility to a police officer's testimony than to that of a lay witness, a question that Mr. Hodges requested the court ask when he submitted his proposed jury voir dire questions. The trial court refused to ask the question."
(Hodges's brief at p. 65.)
Hodges's argument is not supported by the record. The record shows that when the trial court was reviewing the requested defense voir dire questions the following occurred:
"The Court: ... Now, number 49, I will ask jurors whether any of them have any law enforcement background or any of their family members have any law enforcement background."
(R. 292.) The record indicates that the trial court asked the prospective jurors the following questions:
"The Court: All right. Now ladies and gentlemen, these are not qualifying questions here, but they are questions that are commonly asked by lawyers, and I am going to ask them rather than let them at this time. So let's go through these right now. The first question is: Have you or any family member ever been employed as a law enforcement officer; whether a police officer, a deputy sheriff, FBI, State Trooper, anything of that kind? And we would just get you to identify yourselves as we go down the list and tell me who it is and what office they were in.
"....
"The Court: Now, for those of you who have been law enforcement officers or have relatives who arehave had employment of that kind, would that association or that employment affect your ability to serve as an impartial juror in the trial of this case? Do any of you feel that way? Let me know.
"(No response.)
"The Court: Thank you. Would anyany of you tend to believe the testimony of a law enforcement officer over that of another witness simply because he is a law enforcement officer?

"(No response.)
"The Court: I see no response."
*903 (R. 354-60) (emphasis added). The trial court did ask this question. Hodges's claim that he was not allowed to question the jurors about any alleged bias in favor of law enforcement is directly refuted by the record.

B.
Hodges argues that the trial court erred in removing two prospective jurors for cause who, he argues, indicated a possible opposition to the death penalty. Hodges's rendition of what occurred during voir dire is not supported by the record.
Initially, we observe that no objections were made when the trial court struck these two prospective jurors for cause; therefore, we are limited to determining whether plain error occurred. Rule 45A, Ala.R.App.P.
During the initial voir dire examination of the prospective jurors, juror L.D. indicated that she had a religious reason that would prevent her from sitting in judgment of anyone. This juror stated, in part, "I am one of Jehovah's Witnesses, and I wouldn't want to sit on a trial like that." (R. 314.)
Hodges characterizes the discussion with this juror the following way: "When questioned by the trial court regarding her feelings on the death penalty...." (Hodges's brief at p. 72.) We note that this juror was never questioned about her feelings about capital punishment. Before any questions related to capital punishment could be asked, this juror indicated that she was religiously opposed to sitting in judgment of her fellow man. We held in Smith v. State, 797 So.2d 503 (Ala. Crim.App.2000), cert. denied, 797 So.2d 549 (Ala.2001), that a trial court does not err in excusing a juror for cause who indicates that he or she is religiously opposed to sitting in judgment of others. We further held that no questions should be asked of the juror concerning his or her religious beliefs. Juror L.D. was correctly struck for cause based on our holding in Smith.
Hodges also argues that it was error for the trial court to strike for cause prospective juror G.W. who indicated that she was not comfortable sitting in judgment of others. The following occurred:
"The Court: Okay, [G.W.] What did you need to tell me?
"Potential Juror: Well, what I have is more of a moral issue as an imperfect person, I am just uncomfortable sitting in judgment of other people, whether it be a matter of trying to deliberate on how much money they need to receive or on a murder trial. And I just felt a moral obligation to let that be known to the court.
"The Court: Okay. Now, if you end up in court up here sometime with a suit, what are youhow are you going to get your case resolved if everybody felt like you?
"Potential Juror: Well, Iwell, I understand what you are saying. I have never had to be in that situation so far, but like I said, I just feel a moral obligation to let that be known. You canI just wanted to do that.
"The Court: Okay. I am going to excuse you from jury duty right now, and I will tell you turn your badge in, and we appreciate you coming."
(R. 315-16.)
This prospective juror did not indicate that she was religiously opposed to sitting in judgment of others. We are troubled by the total absence of questions directed to this prospective juror concerning her statement that she was uncomfortable sitting in judgment of others. However, we find no reversible error based on the Alabama Supreme Court's decision in *904 Evans v. State, 794 So.2d 411 (Ala.2000), and our decision in Ray v. State, 809 So.2d 875 (Ala.Crim.App.2001). In Evans, the Supreme Court stated:
"Evans argues that the trial court's error in excusing E.F.W. violated his right to a trial by an impartial jury, a right guaranteed by Amendments 6 and 14 of the United States Constitution and § 6 of the Alabama Constitution. However, the United States Supreme Court has held that a defendant's federal right to an impartial jury was not automatically violated merely by an erroneous ruling on a challenge for cause. Ross v. Oklahoma, 487 U.S. 81, 87-88, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988); see also United States v. Martinez-Salazar, 528 U.S. 304, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000). As long as the jury that heard the case was impartial, the right guaranteed by the United States Constitution was not violated. See Ross, 487 U.S. at 87-88, 108 S.Ct. 2273. This rule would also apply to § 6 of the Alabama Constitution, which gives the defendant the right to a trial `by an impartial jury of the county or district in which the offense was committed.' The plain meaning of this language is that the defendant is entitled only to an impartial jury and that unless the defendant can show that a trial court's erroneous ruling during jury selection prevented the jury from being impartial, there is no violation of § 6.
"Evans has made no showing that his rights, such as his right to an impartial jury, were probably injuriously affected by the trial court's excusing E.F.W. Therefore, we conclude that the trial court's error in excusing E.F.W. was not reversible, because, even with the error, Evans still had a fair trial with an impartial jury."
As we recently stated in Ray v. State:

"Moreover, the appellant's exercise of his peremptory strikes was not impaired; he used two strikes to remove these veniremembers. In United States v. Martinez-Salazar, 528 U.S. 304, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000), the defendant used a peremptory challenge to cure the trial court's erroneous denial of a challenge for cause. See Ex parte Evans, 794 So.2d 411 (Ala.2000)(trial court's improper granting of State's challenge for cause of veniremember was not reversible error because there was no evidence that appellant's rights probably had been injuriously affected)."
Ray v. State, 809 So.2d at 886.
Even if the trial court improperly struck this juror, there is no plain error based on the Supreme Court's holding in Evans, and this Court's holding in Ray.

C.
Hodges argues that the trial court erred in failing to question the prospective jurors about whether they would automatically vote to impose the death penalty if certain aggravating circumstances were presented. He contends that he was not allowed to question the jurors about their views on capital punishment.
Hodges's argument is not supported by the record. The record reflects that the trial court questioned the prospective jurors about their views on capital punishment. Furthermore, the trial court allowed the defense to ask questions during voir dire. (R. 382). There is absolutely no evidence in the record that Hodges was denied his opportunity to explore the jurors' views on capital punishment.
Most importantly, the jury recommended, by a vote of 8 to 4, that Hodges be sentenced to life imprisonment without the possibility of parole. Therefore, any challenges to the death qualification procedures *905 utilized by the trial court are moot. As the Alabama Supreme Court stated in Ex parte McGahee, 632 So.2d 981, 984 (Ala.1993):
"McGahee also contends that the trial court's voir dire examination of veniremembers outside McGahee's presence violated his rights to a fair trial and to a reliable sentencing hearing. McGahee was not present when the trial court began to question the veniremembers concerning their general qualifications. The Court of Criminal Appeals held that McGahee's absence from part of the voir dire was harmless error, because the jury recommended life without parole.
"....
"McGahee could not have obtained a more favorable recommendation from the jury, which chose between sentences of life without parole and death. Clearly, the jury's recommendation indicates no prejudice to McGahee due to his absence during the questioning about general qualifications."
See also Wilkerson v. State, 686 So.2d 1266 (Ala.Crim.App.1996).
No error or plain error occurred with regard to this issue.

D.
Hodges argues that the trial court erred in refusing to read his 70 requested voir dire questions that were designed, he argues, to uncover any possible racial bias the potential jurors might have had. He asserts that the "failure to properly question the jurors on race bias created the `unacceptable risk that "the death penalty [may have been] meted out arbitrarily or capriciously" or through "whim ... or mistake.' " (Appellant's brief at p. 81.)
There is absolutely no evidence in the record that the failure of the trial court to read the 70 requested jury questions on race resulted in any prejudice to Hodges. The trial court asked veniremembers whether their views on race would affect their verdict. Also, the chosen jury recommended a sentence of life imprisonment without the possibility of parole. There is no error here.

E.
Hodges argues that the trial court erred in failing to grant several of his challenges for cause.
We have stated:
"`To justify a challenge for cause, there must be a proper statutory ground or "`some matter which imports absolute bias or favor, and leaves nothing to the discretion of the trial court.'" Clark v. State, 621 So.2d 309, 321 (Ala. Cr.App.1992) (quoting Nettles v. State, 435 So.2d 146, 149 (Ala.Cr.App.1983)). This Court has held that "once a juror indicates initially that he or she is biased or prejudiced or has deep-seated impressions" about a case, the juror should be removed for cause. Knop v. McCain, 561 So.2d 229, 234 (Ala.1989). The test to be applied in determining whether a juror should be removed for cause is whether the juror can eliminate the influence of his previous feelings and render a verdict according to the evidence and the law. Ex parte Taylor, 666 So.2d 73, 82 (Ala.1995). A juror "need not be excused merely because [the juror] knows something of the case to be tried or because [the juror] has formed some opinions regarding it." Kinder v. State, 515 So.2d 55, 61 (Ala.Cr.App. 1986). Even in cases where a potential juror has expressed some preconceived opinion as to the guilt of the accused, the juror is sufficiently impartial if he or she can set aside that opinion and render a verdict based upon the evidence in the case. Kinder, at 60-61. In order to *906 justify disqualification, a juror "`must have more than a bias, or fixed opinion, as to the guilt or innocence of the accused;" "`such opinion must be so fixed... that it would bias the verdict a juror would be required to render.'" Oryang v. State, 642 So.2d 979, 987 (Ala.Cr.App. 1993) (quoting Siebert v. State, 562 So.2d 586, 595 (Ala.Cr.App.1989)).'"
Whitehead v. State, 777 So.2d 781, 808 (Ala.Crim.App.1999)(quoting Ex parte Davis, 718 So.2d 1166, 1171-72 (Ala.1998), cert. denied, 525 U.S. 1179, 119 S.Ct. 1117, 143 L.Ed.2d 112 (1999)), aff'd, 777 So.2d 854 (Ala.2000), cert. denied, 532 U.S. 907, 121 S.Ct. 1233, 149 L.Ed.2d 142 (2001).

1.
Hodges argues that the trial court erred in failing to strike prospective juror C.T. for cause because, Hodges argues, he was biased against him. The following occurred during the voir dire examination of C.T.:
"The Court: You indicated this morning that you had heard something about this case.
"Potential Juror: Yes.
"The Court: From what source was that?
"Potential Juror: The newspaper and T.V.
"The Court: All right. Do you remember any particular details about it?
"Potential Juror: I remember that there was a van involved. I think the lady was either discovered or the arrest or both were made in Macon County. I believe that the way it was mentioned this morning that she washad a family.
"The Court: All right. If you are selected on this case, do you think you could put aside what you have heard and based your verdict strictly on the evidence in court?
"Potential Juror: I think so.
"The Court: Well, I need to know for sure whether or not you can do that?
"Potential Juror: Yes, sir. I can do that.
"The Court: And do you think you despite what you heard in this case, do you think you can be a fair and impartial juror?
"Potential Juror: Yes, sir.
"The Court: Do you have a fixed opinion as to the guilt or the innocence of this Defendant?
"Potential Juror: No, sir.
"The Court: All right. We will let you meet the other jurors downstairs at three. You may go.
"Mr. Ray [defense counsel]: Your Honor, excuse me. Mr. T., I believe, this was a
"The Court: Oh, yes. You made a political contribution to Mr. Abbett's [district attorney] campaign?
"Potential Juror: No, sir. I hadI put signs up in my yard for him together and
"The Court: Okay. The fact that you did that, would that have a bearing on your ability to be fair and impartial in this case?
"Potential Juror: No.
"The Court: You don't have any close association with Mr. Abbett?
"Potential Juror: No, sir.
"The Court: All right.
"Potential Juror: We had a case that he helped with.
"Mr. Abbett [prosecutor]: I was a prosecutor in a case that he was involved in.
"The Court: Okay. Thatthat wouldn't affect your ability to be a fair juror in this case?

*907 "Potential Juror: No, sir."
(R. 522-23).
Initially, we observe that Hodges never moved that this prospective juror be removed for cause based on any alleged bias on the juror's part. Therefore, we are limited to determining whether there is plain error. Rule 45A, Ala.R.App.P.
Here, the dialogue quoted above clearly shows that this juror never indicated any bias against Hodges. There was absolutely no reason for the trial court, sua sponte, to remove this juror for cause. No error occurred here.
Moreover, Hodges used one of his peremptory challenges to remove this prospective juror. Therefore, if any error had occurred, it would have been harmless. Ray v. State, 809 So.2d 875 (Ala.Crim.App. 2001), citing United States v. Martinez-Salazar, 528 U.S. 304, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000).

2.
Hodges argues that it was error for the trial court to fail to remove prospective juror R.A. for cause. During R.A.'s voir dire examination the following occurred:
"The Court: You indicated this morning that you had heard something about this case. Is that correct?
"Potential Juror: Yes.
"The Court: Do you remember from what source you heard it?
"Potential Juror: From the news.
"The Court: From news?
"Potential Juror: (Nodding head in the affirmative.)
"The Court: A recent article or one time in the past?
"Potential Juror: In the past.
"The Court: Do you remember anything specific that you heard in the past about the case?
"Potential Juror: Yes. That the victim knew the assailant. And
"Mr. Ray: I am sorry, [prospective juror]. I amI am having a hard time hearing you, sir. There is a fan here.
"Potential Juror: Thatthat she knew the assailant andand that they worked together; somesomething like that.
"The Court: All right. Do you have a fixed opinion as to the guilt or the innocence of this Defendant at this point?
"Potential Juror: No.
"The Court: Do you think that you could put aside your impressions or opinions and render a verdict based solely on the evidence that's presented in this court?
"Potential Juror: Yes.
"The Court: Do you have any question about that in your mind?
"Potential Juror: No.
"The Court: All right. Do you think because of what you heard in this case that it would be difficult for you to sit as a fair and impartial juror?
"Potential Juror: No.
"The Court: All right. Fine. You may go. Be back downstairs at three o'clock.
"Potential Juror: Okay.
"The Court: Hold it. Let him wait out there just a minute.
"(Whereupon, potential juror not present.)
"The Court: Yes, sir.
"Mr. Ray: Judge, again, I would like to follow-up with a question of that witness on the basis of asking him to be very certain that he has not heard anything about this case from his son who is with the police departmentwith the Opelika Police Department.
"The Court: Well, the witness has responded in a way that I think is constitutionally *908 appropriate, and he says he can put aside anything that he may have heard about this case and render a verdict based on the evidence. So I am going to deny that, if that is a challenge.
"Mr. Ray: Well, it's really a request for additional follow up, but I will make it in the form of a challenge since I am unable to
"The Court: All right. I am not going to let you just ask questions of these jurors, Mr. Ray; toit's been my experience that lawyers can pretty well get jurors to say most anything they want when they frame questions individually, and I am not going to permit that in this case."
(R. 416-18.)
This juror never indicated any bias against Hodges. He also said that he could base his decision on the evidence presented at trial and would not be influenced by what he had heard about the case. There was absolutely no reason to remove this juror for cause.
Moreover, the defense used one of its peremptory strikes to remove this juror from the venire. Therefore, even if the trial court erred, any error was harmless. Evans v. State, 794 So.2d 411 (Ala.2000).

3.
Hodges argues that the trial court erred in failing to excuse prospective juror B.H. for cause. The following occurred during the voir dire questioning of B.H.:
"The Court: You indicated this morning that you had heard something about this case. Is that correct?
"Potential Juror: Yes, sir. Newspaper.
"The Court: Is that the only source, newspaper? Was it right after it happened or today?
"Potential Juror: Only right after it happened.
"The Court: Do you remember anything in particular that you heard?
"Potential Juror: I just remember it was in the paper.
"The Court: All right. Do you think based on what you heard that it would make it difficult for you to serve as a fair and impartial juror?
"Potential Juror: No, sir.
"The Court: Do you think you can put aside what you have heard and render a verdict if you are selected based solely on the evidence in this case?
"Potential Juror: (Nodding head in the affirmative.)
"The Court: Is that a yes?
"Potential Juror: Yes, sir.
"The Court: Do you have a fixed opinion as to the guilt or the innocence of this Defendant?
"Potential Juror: I sure don't.
"The Court: All right. Thank you, sir. You can wait outside. You can meet the others downstairs at threeat three.
"(Whereupon, potential juror not present.)
"Mr. Ray: Judge, if I may
"The Court: Yes.
"Mr. Ray:follow up on that witness. We would request the right to ask the follow-up questions because he indicated that heI believe he said a close relative had been a victim of a crime, the crime of robbery and rape, and we think that because of violent nature of that crime
"The Court: Is he still out there? See if he is still out there, Paul.
"Bailiff: Who?
"The Court: Huh? Run catch him and bring him back.
"....

*909 "The Court: Did you indicate this morning that you had a relative that was the victim of a robbery or a rape?
"Potential Juror: Both.
"The Court: Where is that?
"Potential Juror: North Carolina.
"The Court: How long ago was that?
"Potential Juror: Probably three years.
"The Court: Okay. As a result of those experiences do you think that would affect your ability to sit as a juror in this case?
"Potential Juror: No, sir.
"The Court: You are telling me without question that that would not affect your ability to sit?
"Potential Juror: It sure wouldn't."
(R. 449-52.)
This prospective juror never indicated that he had any bias against Hodges. Furthermore, he said that none of his experiences would affect his ability to be impartial. There was no reason to remove this juror for cause.
Moreover, Hodges used a peremptory strike to remove this juror. Therefore, any conceivable error was harmless. Ray v. State, 809 So.2d 875 (Ala.Crim.App. 2001).

4.
Hodges argues that the trial court erred in failing to remove prospective juror C.P. for cause.
There was no objection to the failure to remove this juror for cause. We are limited to considering whether plain error occurred. Rule 45A, Ala.R.App.P.
The following occurred during the voir dire examination of C.P.:
"The Court: You indicated this morning that you had heard something about this case. Do you remember from what source?
"Potential Juror: I read it in the newspaper when the incident first happened.
"The Court: Do you remember anything in particular about any details?
"Potential Juror: All I remember is something about a van and I believe she was found in the van. I am not really sure.
"The Court: Do you think because of what you heard it would be difficult for you to be a fair and impartial juror?
"Potential Juror: No, sir.
"The Court: Do you think you can put aside what you heard and render a verdict based strictly on the evidence presented in court?
"Potential Juror: Yes, sir.
"The Court: Do you have a fixed opinion as to the guilt or the innocence of this Defendant?
"Potential Juror: No, I don't.
"The Court: Okay. You indicated also that you had made a political contribution to Mr. Abbett's [district attorney] campaign.
"Potential Juror: Not a contribution. I just had a sign in my yard.
"The Court: All right. Do you think that it would be difficult because he is prosecuting this case for you to be fair and impartial to both sides?
"Potential Juror: I don't think it would be.
"The Court: All right. We will let you wait downstairs with the other jurors."
(R. 508-09).
This juror indicated that she did not have a preconceived view of Hodges's guilt and that she could base her decision on the evidence presented at trial. There was no reason to remove this juror for cause.
Also, Hodges used one of his peremptory strikes to remove this juror. Thus, if *910 error did occur it was, at most, harmless. Ray v. State, 809 So.2d 875 (Ala.Crim.App. 2001).

5.
Hodges argues that it was error to not remove prospective juror G.N. for cause because of her bias.
There was no objection or request for follow-up questions of this juror; therefore we look only for plain error. Rule 45A, Ala.R.App.P.
The following occurred during voir dire:
"The Court: You indicated this morning you heard something about this case. From what source is that?
"Potential Juror: I heard it from the press and also at the time I had worked at Farmers National Bank as a bank teller over there at the Winn Dixie, which is right by where the Golden Corral is, and they hadGolden Corral did business with Farmers National, so just through word of mouth at that time.
"The Court: All right. Do you think because of what you heard about this case that it would be difficult for you to be a fair and impartial juror?
"Potential Juror: I don't think so.
"The Court: Did you know the victim in this case?
"Potential Juror: No.
"The Court: Can you put aside what you have heard and render a verdict based strictly on the evidence presented to the Court?
"Potential Juror: Yes. JustIto be honest, I don't even remember anything about it. It's been so long I don't really remember it.
"The Court: Do you have a fixed opinion as to the guilt or the innocence of this Defendant?
"Potential Juror: No, sir."
(R. 502-03.)
Clearly, the voir dire shows that this juror did not have a fixed opinion about Hodges's guilt and could be impartial. There was no reason to remove this juror for cause, and no plain error occurred.

6.
Hodges argues that the trial court erred in failing to remove J.S. for cause. During voir dire questioning this juror indicated that his brother worked for the sheriff in another county and that his uncle had been murdered. (R. 358, 363-64.) He indicated that his brother's employment and his uncle's murder would not affect his ability to be impartial. (359-60, 364.) Hodges did not request that any further questions be asked of this juror. The record discloses no error in the trial court's failure to remove this juror for cause.

7.
Hodges argues that the trial court should have removed prospective juror E.A. for cause because of her bias. The following occurred:
"The Court: You indicated this morning that you had heard something about this case. Is that correct?
"Potential Juror: Yes.
"The Court: Do you remember from what source you heard something?
"Potential Juror: Just what was on the news; what was in the paper.
"The Court: All right. You mean today or sometime in the past?
"Potential Juror: No. No. In the past.
"The Court: Do you remember anything specific about what you heard or you read?
"Potential Juror: Justyou know, just that two men were charged with murder, you know.

*911 "The Court: Okay. Do you think because of what you heard about this case that it would be difficult for you to be a fair and impartial juror?
"Potential Juror: No.
"The Court: Can you put aside your impressions of what you heard andand base a verdict solely on the evidence that's presented in court?
"Potential Juror: Yes, sir.
"The Court: Do you have any question in your mind about that?
"Potential Juror: No.
"The Court: Do you have a fixed opinion at this time as to the guilt or the innocence of this Defendant?
"Potential Juror: No.
"The Court: All right. Fine. Thank you, ma'am. You may wait right outside.
"Mr. Abbett [district attorney]: I wanted to ask a follow-up question, I believe she said
"The Court: She will have to wait outside just a minute.
"(Whereupon, potential juror not present.)
"The Court: What follow-up?
"Mr. Abbett: Her sister and mother had used Floyd Likins [defense counsel] for legal representation, and I just wanted to ask her if that was
"The Court: I have already asked that question, and you got no response from any jurors about whether or not that would have any affect on their ability to sit as a juror.
"Mr. Ray [defense counsel]: Your Honor, also, if I may, she also stated that she knew the sister of the decedent, and I certainly think we are entitled to ask some follow-up questions about her relationship.
"The Court: All right. Ask her to come back in then.
"(Whereupon, potential juror present.)
"The Court: [E.A.] did you indicate that you knew the alleged victim's sister in this case?
"Potential Juror: Yes, I do.
"The Court: Howhow do you know her?
"Potential Juror: I used to work with her at Ampex [Corporation].
"The Court: How long ago has that been?
"Potential Juror: Probably 8 or 10 years.
"The Court: Have you had any contact with her since that time?
"Potential Juror: She comes in the grocery store where I work. She talks to me. She also works where my husband works at.
"The Court: Okay. Has she talked to you about this case?
"Potential Juror: No, sir.
"The Court: Do you think that association is such that it would be difficult for you to be a fair and impartial juror in this case?
"Potential Juror: No.
"The Court: You don't think that would have any affect on your ability to be a fair juror?
"Potential Juror: No."
(R. 419-22.)
This juror never indicated any bias against Hodges. There was no reason to remove this juror for cause.
Moreover, defense counsel used one of his peremptory strikes to remove this juror; therefore, if error occurred it was harmless. Ray v. State, 809 So.2d 875 (Ala.Crim.App.2001).

*912 8.
Hodges argues that the trial court should have removed prospective juror B.W. for cause because she indicated that her son-in-law worked for the Phenix City Police Department and that her son had been the victim of a violent crime. She was questioned during the group voir dire and she indicated that neither of these facts would affect her ability to be impartial. (R. 359-60, 364.) Hodges did not request any follow-up questions. The record fails to establish any plain error here.

9.
Hodges argues that prospective juror E.J. should have been struck for cause because she identified with the victim; therefore, he argues, she was biased against him. The following occurred:
"The Court: You indicated this morning that you had heard something about this case.
"Potential Juror: Yes, sir.
"The Court: Do you remember from what source?
"Potential Juror: Newspaper account and a television account.
"The Court: Was that right after it happened?
"Potential Juror: Yes, sir.
"The Court: Do you remember anything in particular about what you heard?
"Potential Juror: A great deal really because she hadwe had shared the first name.
"The Court: Uh-huh.
"Potential Juror: It was
"The Court: You are talking about the victim?
"Potential Juror: The victim. Yes. And just to bethe victim. Yes. And just to be friendly and outgoing, I thought of myself, andand the family, a picture of the childrenthe children and the family at a grave site.
"The Court: All right. Do you think based on what you have heard, that it would make it difficult for you to sit as a fair and impartial juror in this case?
"Potential Juror: No, sir. I have to make those kinds of impartial judgments all the time, you know, inin line of teaching and working with children and making decisions about what they should do, so no, I could set that aside.
"The Court: Okay. Do youdo you think you could set aside what you heard and render a verdict based solely on the evidence presented in court?
"Potential Juror: Yes, sir.
"The Court: Do you have a fixed opinion as to the guilt or the innocence of this Defendant?
"Potential Juror: No, sir."
(R. 477-79).
This juror indicated that she was not biased and could base her verdict on the evidence presented at trial. There was absolutely no reason to remove this juror for cause.

10.
Hodges argues that the trial court should have struck R.R. for cause because he indicated during voir dire that his brother-in-law worked for the Federal Bureau of Investigation and this alone, without further questioning, was reason enough to establish this juror's bias.
Hodges's rendition of what occurred is not supported by the record. The record shows that the trial court asked the members if the fact that they had relatives in law enforcement would affect their ability to be impartial. This juror did not respond. (R. 359-60.) The record fails to show that this juror was biased. There is no plain error here.

*913 11.
Hodges argues that juror M.M. should have been removed for cause because he indicated that his house had once been burglarized. (R. 363.) However, this juror also indicated that this would not affect his ability to be fair and impartial. (R. 364.)
Moreover, Hodges used one of his peremptory strikes to remove this juror (C.R. 732); therefore, if error occurred it was harmless. Ray v. State, 809 So.2d 875 (Ala.Crim.App.2001).

F.
Hodges argues that the trial court erred in failing to grant his request to use juror questionnaires. The record reflects that, before trial, defense counsel moved that the jurors called for service be sent an 11-page juror questionnaire. At the pretrial hearing on this issue the trial court stated, "I am not going to permit a juror questionnaire of the kind that you have attached to this motion, which I consider to be intrusive, violating the private affairs of jurors and goes far beyond what I would consider to be relevant information that would be needed to select this jury." (R. 114.) The questionnaire contained 54 questions, many with multiple subparts. If the court had required the veniremembers to complete the questionnaire, the veniremembers would have had to respond to a broad range of topics, including their spouses's job duties, the names and birthplaces of their parents, prior places of employment, and addresses of previous residences, and what purpose, if any, the veniremembers believed the death penalty served. (C.R. 273-83.)
In Ex parte Land, 678 So.2d 224, 242 (Ala.), cert. denied, 519 U.S. 933, 117 S.Ct. 308, 136 L.Ed.2d 224 (1996), the Alabama Supreme Court held that the method of voir dire examination is within the discretion of the trial court and a trial court's refusal to allow the use of juror questionnaire is not an abuse of that discretion. See also McGriff v. State, [Ms. CR-97-0179, September 29, 2000] ___ So.2d ___ (Ala.Crim.App.2000), aff'd on return to remand, [Ms. CR-97-0179, Aug. 31, 2001]. The voir dire conducted in this case was very extensive and thorough. The trial court did not abuse its discretion in declining to allow use of this intrusive questionnaire.
Hodges further argues that the failure to allow these questionnaires violated Rule 18.2, Ala.R.Crim.P. which states:
"Prior to the voir dire examination, each party, upon request, shall be furnished with a list of the names and addresses of the prospective jurors called for the venire, together with such biographical information as to each prospective juror as the court may have obtained by local rule. Any information so obtained shall be used only for the purpose of jury selection."
Certainly, the questionnaire at issue in this case went far beyond the basic information that Rule 18.2 allows. The trial court's refusal to allow the questionnaires did not violate Rule 18.2.

G.
Hodges argues that the trial court erred in denying his motion for personal service of the jurors summoned for jury duty the week of his trial. The trial judge noted that personal service would be impossible because of the high mobility of the residents of Lee County and that it was his experience that the jurors who appeared were a representative cross-section of the community. The trial court also noted that it would have the excusals granted on the morning of trial put in the record. There is no law requiring that jurors be personally served with notification *914 of jury duty. There was no error here.
On appeal Hodges also argues that it was error for the trial court to not personally rule on every request to excuse a potential juror. This exact issue has been resolved by the Alabama Supreme Court in Windsor v. State, 683 So.2d 1021 (Ala.1994). The Alabama Supreme Court held that in the absence of fraud a trial court may delegate the authority to excuse jurors to clerk's office personnel. Id. at 1025-27. Hodges is not entitled to relief on this claim.

VIII.
In Issue III of his brief to this Court, Hodges argues that the trial court erred in denying his motions for funds to hire an investigator, a mitigation expert, a neuropsychologist, and an electrocution expert.
The record reflects that defense counsel filed several ex parte motions requesting that he be given funds to hire experts. The first motion, a motion for funds to hire an investigator, requested $7,000 to hire an investigator to assist with the case.[4] Second, Hodges moved that he be given $800 to obtain a DNA expert. Third, Hodges requested that he be given up to $7,000 to hire a mitigation expert. Last, Hodges requested $3,500 so that he could hire a neuropsychologist.
The trial court entered an order denying the motions, and stated:
"An ex parte hearing was held on July 10, 1998, at request of the Defendant's attorney. The defense sought $7,000 in expense money to assist in the preparation of the defense case. The defense wants to hire an investigative firm to assist in preparation of the defense in various respects.
"In the case of Dubose v. State, 662 So.2d 1189 [ (Ala.1995) ], the Court pointed out that for a Defendant to be entitled to funds to pay for an expert, he must show more than a mere possibility of assistance of an expert. He must go forward and show a reasonable probability that an expert would aid in his defense and that denial of an expert to assist at trial would result in a fundamentally unfair trial.
"The Court further stated that funds are not warranted where defense counsel offers little more than undeveloped assertions that expert assistance is necessary.
"One of the areas in which assistance is sought is to retain a medical geneticist for independent DNA testing. That motion is GRANTED and defense is authorized to spend funds up to the sum of $800.00 for this service.
"The Court finds that the standards as set forth in the Dubose case have not been met by the defense in it assertion for State funds for assistance. Therefore, said request is, at this time, DENIED."
(C.R. 294.)
The record reflects that Hodges's motion for funds to hire an investigator stated that he needed the investigator because one of the attorneys was a solo practitioner and he had never handled a capital case. Attached to the motion was a copy of a practitioner's manual on how to represent a capital defendant. The motion was a general motion requesting that he be given funds because all capital defendants should be given funds for an investigator. (Supp. R. 6-119.)[5]
*915 The motion for funds to hire a mitigation expert was similar to the motion for an investigator. It was a general request that Hodges be allowed funds for an expert to investigate mitigation evidence. It detailed some of Hodges's background. (Supp. R. 142-49.) However, this evidence was introduced at the penalty phase through Hodges's mother's testimony. (R. 1189-1217.)
Last, Hodges requested a neuropsychologist. In the motion he attached the affidavit of a psychologist who stated Hodges might have a mental disorder caused by his traumatic childhood. (Supp. R. 151-73.) However, there was never any pretrial motion that Hodges be mentally evaluated. Rule 11, Ala.R.Crim.P. Hodges's mental condition was never made an issue at trial. Also, in defense counsel's closing argument in the penalty phase counsel stated:
"You give it the weight that you think that it deserves, but mitigation is anything about the life, the background and the history of this human being that's got his life on the line here that should be considered. That's real mitigation. You will hear the definition of it. Don't be faked off [sic] here because we don't have a mental problem here. We have never said that Melvin didn'tthat Melvin had a mental problem."
(R. 1235.)
As the Alabama Supreme Court stated in Dobyne v. State, 672 So.2d 1354 (Ala.1995):
"[A] defendant, in order to be entitled to funds to pay for an expert, must show more than a mere possibility that he or she will receive useful assistance from the expert. Rather, the defendant must show a reasonable probability that the expert would aid in the defense and that the denial of an expert to assist at trial would result in a fundamentally unfair trial. In the past, Alabama decisions have been based upon whether the defendant made an adequate showing of a need for the requested expert. Dubose [v. State], 662 So.2d [1189,] 1191 [(Ala. 1995)]; see also, Smith v. State, 623 So.2d 369 (Ala.Cr.App.1992), cert. denied, 510 U.S. 1030, 114 S.Ct. 650, 126 L.Ed.2d 607 (1993); McLeod v. State, 581 So.2d 1144 (Ala.Cr.App.1990); Siebert v. State, 562 So.2d 586 (Ala.Cr.App. 1989), aff'd, 562 So.2d 600 (Ala.), cert. denied, 498 U.S. 963, 111 S.Ct. 398, 112 L.Ed.2d 408 (1990); Stewart v. State, 562 So.2d 1365 (Ala.Cr.App.1989); McGahee v. State, 554 So.2d 454 (Ala.Cr. App.), aff'd, 554 So.2d 473 (Ala.1989).
"....
"As we stated in Dubose, a defendant seeking expert assistance must show a reasonable probability that the expert would aid in the defense and that the denial of an expert to assist at trial would result in a fundamentally unfair trial. Dobyne failed to make such a showing. Dubose involved `critical' DNA evidence that directly linked Dubose to the crime. This Court held that Dubose had made an adequate showing of the need for the requested services of a DNA expert. Here, Dobyne requested funds to hire a neurologist to present evidence of mitigating circumstances at the penalty phase of the trial. While we agree that there can be a need for expert assistance at the penalty phase of a capital trial, Dobyne has not shown that the denial of funds to hire a neurologist resulted in unfairness to him."
672 So.2d at 1357-59. Hodges failed to show that his trial was fundamentally unfair because of the failure of the trial court to approve funds for experts. Therefore, the trial court correctly held that Hodges failed to meet his burden of showing that he was entitled to state funds.
*916 Hodges argues that the trial court erred when it refused to allow funds for an electrocution expert. Hodges filed a pretrial motion challenging Alabama's method of electrocution. (C.R. 488-511.) He requested funds to hire an expert to examine and analyze the condition of Alabama's electric chair. The trial court denied the motion. (R. 237). The trial court ruled correctly, because Alabama courts have repeatedly upheld Alabama's method of electrocution. See Williams v. State, 627 So.2d 985 (Ala.Crim.App.1991), aff'd, 627 So.2d 999 (Ala.1993), cert. denied, 511 U.S. 1012, 114 S.Ct. 1387, 128 L.Ed.2d 61 (1994); Wright v. State, 494 So.2d 726 (Ala.Crim.App.1985), aff'd, 494 So.2d 745 (Ala.1986), cert. denied, 479 U.S. 1101, 107 S.Ct. 1331, 94 L.Ed.2d 183 (1987).
Hodges also argues that the trial court erred in not allowing him funds to obtain copies of the master lists of jurors called for service in Lee County. He argues that he wanted to attack Lee County's method of selecting prospective jurors. The trial court, when ruling on the motion, stated that Lee County called jurors for service using a master list containing the names of licensed drivers in Lee county. As we stated in Carroll v. State, 852 So.2d 801 (Ala.Crim.App.1999):
"This court has observed that `"random selection from a list of licensed drivers has [repeatedly] been held to be an acceptable manner in which to select a jury."` Stanton v. State, 648 So.2d 638, 640 (Ala.Cr.App.1994), quoting Sistrunk v. State, 630 So.2d 147, 149 (Ala. Cr.App.1993). See also Benefield v. State, 726 So.2d 286 (Ala.Cr.App.1998); Travis v. State, 776 So.2d 819 (Ala.Crim. App.1997); Smith v. State, 698 So.2d 189 (Ala.Cr.App.1996), aff'd, 698 So.2d 219 (Ala.), cert. denied, 522 U.S. 957, 118 S.Ct. 385, 139 L.Ed.2d 300 (1997); Guthrie v. State, 689 So.2d 935 (Ala.Cr.App. 1996); Dobyne v. State, 672 So.2d 1319 (Ala.Cr.App.1994); Stewart v. State, 623 So.2d 413 (Ala.Cr.App.1993); Joyce v. State, 605 So.2d 1243 (Ala.Cr.App.1992); Pierce v. State, 576 So.2d 236 (Ala.Cr. App.1990), cert. denied, 576 So.2d 258 (Ala.1991); Robinson v. State, 560 So.2d 1130 (Ala.Cr.App.1990); Jackson v. State, 560 So.2d 1100 (Ala.Cr.App.1989); Vaughn v. State, 485 So.2d 388 (Ala.Cr. App.1986); and Lopez v. State, 415 So.2d 1204 (Ala.Cr.App.1982)."
Carroll at 807-08, aff'd in part, 852 So.2d 821 (Ala.2001).
Because this method of jury selection has repeatedly been upheld, we find no reversible error in the trial court's denial of funds to obtain the jury master lists.

IX.
In Issue XIII of his brief, Hodges argues that the trial court erred in allowing what he says were unduly prejudicial and gruesome photographs to be introduced at trial. We disagree.
"`Photographic evidence is admissible in a criminal prosecution if it tends to prove or disprove some disputed or material issue, to illustrate some relevant fact or evidence, or to corroborate or dispute other evidence in the case. Photographs that tend to shed light on, to strengthen, or to illustrate other testimony presented may be admitted into evidence. Chunn v. State, 339 So.2d 1100, 1102 (Ala.Cr.App. 1976). To be admissible, the photographic material must be a true and accurate representation of the subject that it purports to represent. Mitchell v. State, 450 So.2d 181, 184 (Ala.Cr. App.1984). The admission of such evidence lies within the sound discretion of the trial court. Fletcher v. State, 291 Ala. 67, 277 So.2d 882, 883 (1973); Donahoo v. State, 505 So.2d 1067, *917 1071 (Ala.Cr.App.1986) (videotape evidence). Photographs illustrating crime scenes have been admitted into evidence, as have photographs of victims and their wounds. E.g., Hill v. State, 516 So.2d 876 (Ala.Cr.App. 1987). Furthermore, photographs that show the external wounds of a deceased victim are admissible even though the evidence is gruesome and cumulative and relates to undisputed matters. E.g., Burton v. State, 521 So.2d 91 (Ala.Cr.App.1987). Finally, photographic evidence, if relevant, is admissible even if it has a tendency to inflame the minds of the jurors. Hutto v. State, 465 So.2d 1211, 1212 (Ala. Cr.App.1984).'

"Ex parte Siebert, 555 So.2d 780, 783-84 (Ala.1989), cert. denied, 497 U.S. 1032, 110 S.Ct. 3297, 111 L.Ed.2d 806 (1990). This court has held that autopsy photographs, although gruesome, are admissible to show the extent of a victim's injuries. See Dabbs v. State, 518 So.2d 825, 829 (Ala.Crim.App.1987).
"Here, the photographs in question depicted matters that were relevant and material to the issues in Ferguson's case and they corroborated the trial testimony. `The fact that a photograph is gruesome and ghastly is no reason to exclude it from the evidence, so long as the photograph has some relevancy to the proceedings, even if the photograph may tend to inflame the jury.' Bankhead v. State, 585 So.2d 97, 109-10 (Ala.Crim. App.1989), remanded on other grounds, 585 So.2d 112 (Ala.1991), aff'd on return to remand, 625 So.2d 1141 (Ala.Crim. App.1992), rev'd on other grounds, 625 So.2d 1146 (Ala.1993). `The state had the burden of proving that the victim was dead, and [these photographs were] direct evidence on that point.' Jenkins v. State, 627 So.2d 1034, 1045 (Ala.Crim. App.1992), aff'd, 627 So.2d 1054 (Ala. 1993), cert. denied, 511 U.S. 1012, 114 S.Ct. 1388, 128 L.Ed.2d 63 (1994).
"We have reviewed the complained-of photographs and we are unpersuaded by Ferguson's argument that they were improperly admitted. The photographs were admissible: they were relevant to show the crime scene and the injuries each victim suffered and they helped to illustrate the testimony of the investigating officers concerning the crime scene, as well as to illustrate the testimony of the coroner concerning the type and extent of the wounds that caused the victims' deaths."
Ferguson v. State, 814 So.2d 925, 944-45 (Ala.Crim.App.2000), aff'd, 814 So.2d 970 (Ala.2001).
We have examined the photographs. The photographs show the victim from various angles. Some show tire tracks on Seaton's back. The State had the burden of proving a prima facie case of capital murder. The photographs were admissible for the purpose of establishing Seaton's death and were direct proof of how Seaton was murdered. The trial court did not err in allowing these photographs to be received into evidence at trial.

X.
In Issue X of his brief to this Court, Hodges argues that the trial court erred in allowing forensic scientist Craig Bailey to testify without first being qualified as an expert. Bailey testified that the tire tracks on the victim's body were similar to the tire impressions made from the rear tires of Seaton's vehicle. (R. 957.) Hodges never argued at trial that Bailey had not been formally qualified as an expert. Therefore, we are limited to determining whether there is plain error here. Rule 45A, Ala.R.App.P.
The record reflects that Bailey testified that he was employed as a forensic scientist at the Alabama Department of Forensic *918 Sciences. He stated the following about his education and background:
"I have a Bachelor of Science Degree in Chemistry from the University of Alabama in Birmingham. I also have a couple of graduate courses from that same institution. I was employed in 1971 with the Department. I went through training or internship with that department at that time. I have attended a number of training schools relative to forensic science during the course of my employment with the department both beginning and even present."
(R. 938-39.) Though Bailey was never formally tendered as an expert, he testified that he had worked at the Alabama Department of Forensic Sciences since 1971.
Rule 702, Ala.R.Evid., states:
"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."
"Whether a witness is sufficiently qualified to testify as an expert is a question for the trial court to resolve in its discretion, and its ruling will not be disturbed on appeal unless it has abused that discretion." Smith v. State, 698 So.2d 189, 205 (Ala. Crim.App.1996), aff'd, 698 So.2d 219 (Ala. 1997), cert. denied, 522 U.S. 957, 118 S.Ct. 385, 139 L.Ed.2d 300 (1997). "Experience and practical knowledge may qualify one to make technical judgments as readily as formal education." International Telecomm. Sys. v. State, 359 So.2d 364, 368 (Ala.1978). "An individual may qualify as an expert by study, practice or observation." Gullatt v. State, 409 So.2d 466, 472 (Ala.Crim.App.1981). Certainly, Bailey's 28 years with the Department of Forensic Sciences qualified him as an expert.
Bailey was correctly allowed to state his opinion about whether the tire tracks on Seaton's body were similar to the tire impressions from the rear tires of Seaton's vehicle. Moreover, the jury had the benefit of comparing the tire marks and the tire impressions. Based on the record we find no abuse of discretion resulting from the court's permitting Bailey to testify to these matters. Therefore, we find no plain error here.

XI.
In Issue XIX of his brief, Hodges argues that certain items of evidence were admitted without the benefit of a proper chain of custody. Hodges merely lists more than 25 items of evidence, without presenting any argument as to why each item of evidence should have been excluded.
We have examined the record and find no evidence that was unlawfully admitted at trial. Moreover, as § 12-21-13, Ala. Code 1975, states:
"Physical evidence connected with or collected in the investigation of a crime shall not be excluded from consideration by a jury or court due to a failure to prove the chain of custody of the evidence. Whenever a witness in a criminal trial identifies a physical piece of evidence connected with or collected in the investigation of a crime, the evidence shall be submitted to the jury or court for whatever weight the jury or court may deem proper. The trial court in its charge to the jury shall explain any break in the chain of custody concerning the physical evidence."
Hodges is not entitled to any relief on his claim.

*919 XII.
In Issue VIII of his brief, Hodges argues that the prosecutor engaged in several instances of misconduct that resulted in the denial of his right to a fair trial.

A.
When reviewing a claim of prosecutorial misconduct we are governed by the following principles:
"`Questions of the propriety of argument of counsel are largely within the trial court's discretion. McCullough v. State, 357 So.2d 397, 399 (Ala.Cr.App. 1978), and that court is given broad discretion in determining what is permissible argument. Hurst v. State, 397 So.2d 203, 208 (Ala.Cr.App.), cert. denied, 397 So.2d 208 (Ala.1981). Moreover, this Court has stated that it will not reverse unless there has been an abuse of discretion. Miller v. State, 431 So.2d 586, 591 (Ala.Cr.App.1983).
"`....
"`In reviewing allegedly improper prosecutorial comments, conduct, and questioning of witnesses, the task of this Court is to consider their impact in the context of the particular trial, and not to view the allegedly improper acts in the abstract. Whitlow v. State, 509 So.2d 252, 256 (Ala.Cr.App.1987); Wysinger v. State, 448 So.2d 435, 438 (Ala.Cr.App. 1983); Carpenter v. State, 404 So.2d 89, 97 (Ala.Cr.App.1980), cert. denied, 404 So.2d 100 (Ala.1981). Moreover, this Court has also held that statements of counsel in argument to the jury must be viewed as delivered in the heat of debate; such statements are usually valued at their true worth and are not expected to become factors in the formulation of the verdict. Orr v. State, 462 So.2d 1013, 1016 (Ala.Cr.App.1984); Sanders v. State, 426 So.2d 497, 509 (Ala.Cr.App.1982).'"
Burgess v. State, 827 So.2d 134, 161 (Ala.Crim.App.1998)(quoting Bankhead v. State, 585 So.2d 97, 105-07 (Ala.Cr.App. 1989), remanded on other grounds, 585 So.2d 112 (Ala.1991)), aff'd, 827 So.2d 193 (Ala.2000).
Also, "`[t]his court has concluded that the failure to object to improper prosecutorial arguments ... should be weighed as part of our evaluation of the claim on the merits because of its suggestion that the defense did not consider the comments in question to be particularly harmful.'" Kuenzel v. State, 577 So.2d 474, 489 (Ala. Cr.App.1990), aff'd, 577 So.2d 531 (Ala.), cert. denied, 502 U.S. 886, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991), quoting Johnson v. Wainwright, 778 F.2d 623, 629 n. 6 (11th Cir.1985), cert. denied, 484 U.S. 872, 108 S.Ct. 201, 98 L.Ed.2d 152 (1987).
Moreover, a prosecutor's argument will not constitute reversible error unless it has "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986).
With these principles in mind, we review the challenged comments.

1.
Hodges argues that the prosecutor introduced victim-impact evidence in the guilt phase of the proceedings. Specifically, he claims that, in opening and closing arguments, and in the direct examination of the victim's sister, Melody Campbell, the prosecutor personalized the victim. Hodges did not object at trial to the arguments made by the prosecutor or to the examination of the victim's sister; therefore, our review is for plain error. Rule 45A, Ala.R.App.P.
The victim's sister, Melody Campbell, testified that, on the day of *920 Seaton's murder, she had taken her children to the Golden Corral restaurant after she had been to church and that Seaton's husband brought Seaton's daughter to the Golden Corral that afternoon. She said that she took Seaton's daughter home with her and that Seaton was to pick up her daughter after work that night. She testified that Seaton never came to her house to get her daughter. This testimony was relevant and admissible to show the victim's movements on the day of her murder and went toward establishing the time of the murdera fact that would tend to corroborate Murph's rendition of the events. This evidence was not offered as victim-impact evidence. Also, during opening statements the prosecutor told the jury that the victim was referred to as "Beth." Certainly, this was the prosecutor's method of identifying the victim to the jury, and was in no way improper.
Even if we were to classify the testimony and argument as victim-impact evidence, we would find no reversible error for the reasons we stated in Smith v. State, 756 So.2d 892 (Ala.Crim.App.1997), aff'd, 756 So.2d 957 (Ala.), cert. denied, 531 U.S. 830, 121 S.Ct. 82, 148 L.Ed.2d 44 (2000). In Smith, this Court addressed a similar issue and stated:
"In Ex parte Rieber, 663 So.2d 999 (Ala.), cert. denied, 516 U.S. 995, 116 S.Ct. 531, 133 L.Ed.2d 437 (1995), the Alabama Supreme Court held as follows:
"`We agree with Rieber that Mr. Craig's testimony concerning Ms. Craig's children, their ages, and the status of their custody after the murder was not relevant with respect to the question of his guilt or innocence and, therefore, that it was inadmissible in the guilt phase of the trial. The only issue before the jury during the guilt phase of the trial was whether Rieber had robbed and killed Ms. Craig. However, in Ex parte Crymes, 630 So.2d 125 (Ala.1993), a plurality of this Court held in a capital murder case in which the defendant was sentenced to life-imprisonment without parole that a judgment of conviction can be upheld if the record conclusively shows that the admission of the victim impact evidence during the guilt phase of the trial did not affect the outcome of the trial or otherwise prejudice a substantial right of the defendant. See, also, Giles v. State, 632 So.2d 568 (Ala.Crim.App.1992), aff'd, 632 So.2d 577 (Ala.1993), cert. denied, 512 U.S. 1213, 114 S.Ct. 2694, 129 L.Ed.2d 825 (1994); Ex parte Parker, 610 So.2d 1181 (Ala.1992), cert. denied, 509 U.S. 929, 113 S.Ct. 3053, 125 L.Ed.2d 737 (1993); Lawhorn v. State, [581 So.2d 1159 (Ala.Cr. App.1990)]; Hooks v. State, 534 So.2d 329 (Ala.Crim.App.1987), aff'd, 534 So.2d 371 (Ala.1988), cert. denied, 488 U.S. 1050, 109 S.Ct. 883, 102 L.Ed.2d 1005 (1989); and Ex parte Whisenhant, [555 So.2d 235 (Ala.1989)], applying a harmless error analysis in death penalty cases. Our review of the record indicates that Rieber's attorneys did not object to Mr. Craig's brief references to Ms. Craig's children or ask him any questions on cross-examination. The trial court clearly instructed the jury that it had to determine, based on all of the evidence, whether Rieber had robbed and killed Ms. Craig. The jury was instructed that it could not find Rieber guilty unless the prosecutor had established his guilt beyond a reasonable doubt. The jury was also instructed not to let sympathy or prejudice affect its verdict. We caution prosecutors that the introduction of victim impact evidence during the guilt phase of a capital murder trial *921 can result in reversible error if the record indicates that it probably distracted the jury and kept it from performing its duty of determining the guilt or innocence of the defendant based on the admissible evidence and the applicable law. However, after examining the record in its entirety, we conclude that the aforementioned portions of Mr. Craig's testimony, although they should not have been permitted, did not operate to deny Rieber a fair trial. It is presumed that jurors do not leave their common sense at the courthouse door. It would elevate form over substance for us to hold, based on the record before us, that Rieber did not receive a fair trial simply because the jurors were told what they probably had already suspectedthat Ms. Craig was not a "human island," but a unique individual whose murder had inevitably had a profound impact on her children, spouse, parents, friends, or dependents (paraphrasing a portion of Justice Souter's opinion concurring in the judgment in Payne v. Tennessee, 501 U.S. 808, 838, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991)).'
"663 So.2d at 1005-06 (emphasis supplied [in Smith])."
Smith v. State, 756 So.2d at 918.
Hodges is not entitled to relief on this claim.

2.
Hodges argues that the prosecutor improperly referred to him as a liar during closing argument. There was no objection to this comment; therefore, we are required to determine only whether plain error occurred. Rule 45A, Ala.R.App.P.
As we have stated, "References in closing argument to a defendant's character will not constitute reversible error if they are supported by the record. Nicks v. State, 521 So.2d 1018, 1023 (Ala. Cr.App.1987), aff'd, 521 So.2d 1035 (Ala.), cert. denied, 487 U.S. 1241, 108 S.Ct. 2916, 101 L.Ed.2d 948 (1988)." Smith v. State, 795 So.2d 788, 825-26 (Ala.Crim.App.2000). In Smith, we upheld the prosecutor's reference to the defendant as a liar because the term was supported by the record.
Clearly, this was a legitimate inference that could have been drawn from the evidence presented at trial. Hodges testified that he was not present when Seaton was murdered. However, Murph testified that Hodges drove the vehicle over Seaton. Moreover, Hodges's name tag was found near Seaton's dead body. There was also testimony that Hodges confessed to his aunt that he had robbed and killed Seaton. This argument did not constitute plain error.

3.
Hodges contends that the prosecutor argued facts not in evidence when he said:
"In the same way that Mr. Hodges planned this crime and procured, induced, and caused the participation of Mr. Murph, and possibly tried to recruit also Mr. Hicks who couldn't get out of the Lee County Jail that night, to participate in this crime. He told you from the stand he was the planner. So don't even bother yourself as to whether or not he is legally responsible for the result because he had already told you that he was the planner."
(R. 1118-19.) Hodges contends that there was no evidence that Hodges planned to murder Seaton.
However, Murph testified that Hodges planned the robbery and that during the robbery he said that Seaton knew too much. Murph testified that Hodges used Seaton's van to run over her. The prosecutor's *922 statement was supported by the evidence presented at trial.
Hodges also argues that it was error for the prosecutor to argue that Seaton's blouse had been used to wipe the prints off the van when there was no testimony to that effect. There were no prints found in the van. The prosecutor's rendition of events was a legitimate inference that could have been drawn from the evidence. There was no improper argument here.

4.
Hodges makes several claims concerning the prosecutor's arguments at the penalty phase. However, the jury recommended that Hodges be sentenced to life imprisonment without parole. Therefore, Hodges can show no prejudice as a result of any alleged misstatement by the prosecutor at the penalty phase. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
Furthermore, we have considered all of the challenged remarks and find that no remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986).

B.
Hodges argues that the prosecutor led witnesses on direct examination. We have reviewed the record and have found several instances where the prosecutor led State witnesses. Initially, we observe that, in a majority of the instances, no objections were made. Most of the leading questions were asked of witnesses who were called to establish a proper chain of custody of items of evidence. At one point the following occurred:
"The Court: This is a capital case, and as such, the Judge has an obligation to intercede when he sees something that is not going exactly right.
"You are engaging inflagrantly in asking leading questions of any of the witnesses. That's going to have to stop.
"Mr. Abbett [district attorney]: Yes, sir."
(R. 705.)
We have held that the trial court has discretion to allow or disallow a leading question, and the court's decision will not be reversed except for a flagrant violation. McWhorter v. State, 781 So.2d 257, 286 (Ala.Crim.App.1999)(quoting Taylor v. State, 666 So.2d 36, 63 (Ala.Crim.App.), opinion extended after remand, 666 So.2d 71 (Ala.Crim.App.1994), aff'd, 666 So.2d 73 (Ala.1995), cert. denied, 516 U.S. 1120, 116 S.Ct. 928, 133 L.Ed.2d 856 (1996)), aff'd, 781 So.2d 330 (Ala.2000), cert. denied, 532 U.S. 976, 121 S.Ct. 1612, 149 L.Ed.2d 476 (2001). There is absolutely no evidence that Hodges was prejudiced by the prosecutor's leading questions directed to these State witnesses who were called to establish the proper chain of custody for the admission of certain items of evidence. As we stated in George v. State, 717 So.2d 827 (Ala.Crim.App.1996):
"None of the questions led to the admission of illegal evidence and none prejudiced the appellant. The questions were merely attempts to speed up the direct examination. The trial court is vested with wide discretion in this area `because it has been said that there is no form of question which may not be leading and that the trial court should look beyond the form to the substance and effect of the inquiry in the particular circumstances of the case.' C. Gamble, McElroy's Alabama Evidence, § 121.05(3) (4th ed.1991)." *923 George v. State, 717 So.2d at 838, rev'd on other grounds, 717 So.2d 844 (Ala.1996).
There was no reversible error here.

C.
Hodges argues that the prosecutor improperly presented two aggravating circumstances when there was only one aggravating circumstance present. The State relied on the presentation of two aggravating circumstancesthat the murder was committed during a robbery and that the murder was committed during a kidnapping. Section 13A-5-49(4). We stated in our previous opinion in this case that based on the facts presented in a particular case, § 13A-5-49(4) may indeed present two aggravating circumstances. 856 So.2d at 889. This was a case where the double application of § 13A-5-49(4) was warranted. There was no prosecutorial misconduct in relation to this issue.

D.
Hodges argues that the prosecutor committed misconduct by introducing cumulative evidence in the form of the photographs of the victim. A prosecutor commits no error in presenting the strongest State's case that he is able to present. "`[W]e must not lose sight of the fact that a trial is a legal battle, a combat in a sense, and not a parlor social affair. The solicitor is yet under duty to prosecute with earnestness and vigorto strike hard blows, but not foul ones. Berger v. United States, [295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935)].'" Taylor v. State, 666 So.2d 36, 64 (Ala.Crim.App.1994), quoting Arant v. State, 232 Ala. 275, 280, 167 So. 540, 544 (1936). We have reviewed the photographs and find no prosecutorial misconduct with regard to their introduction at trial.

E.
Hodges argues that the cumulative effect of the alleged instances of prosecutorial misconduct have denied him a fair and impartial trial. As we have often stated, "Because we find no error in the specific instances alleged by the appellant, we find no cumulative error." McGriff v. State, [Ms. CR-97-0179, September 29, 2000] ___ So.2d ___, ___ (Ala.Crim.App. 2000), aff'd on return to remand, [Ms. CR-97-0179, Aug. 31, 2000].

XIII.
In Issue IX of his brief, Hodges argues that the trial court undermined defense counsel by interrupting him in the middle of his closing argument. The following occurred:
"Mr. Ray [defense counsel]: ... I am glad it's not my job to stand up here and ask you to kill somebody and I am glad it's not my job to attempt to enrage you and make you get angry.
"Mr. Abbett [district attorney]: Your Honor, I object to the argument
"The Court: Hold on just a second. What?
"Mr. Abbett: I object to that argument. It's improper.
"The Court: Sustain the objection. Disregard that portion of the argument, ladies and gentlemen, about kill[ing] somebody.
"Mr. Ray: I find it offensive that the State of Alabama wants to present a horror show up here in order to get someone electrocuted.
"Mr. Abbett: I object, Your Honor.
"The Court: Sustained as to that argument.
"Mr. Ray: They brought a carefully produced and directed videotape up here. That videotape did not show one thing *924 that had not already been proven by another witness. That videotape was terrible. And it had one purpose. That was to make you angry. To inflame compassion, revenge, and it was a terrible thing to watch.
"Mr. Abbett: Your Honor, I object to this.
"The Court: Well, ladies and gentlemen, let me remind you what I told you earlier. That what the lawyers say is not evidence in this case. They have some latitude in what they can argue. Overrule the objection to that.
"Mr. Ray: I ask that you not be manipulated based on your passions. I ask you that between now and the time you make a final vote, instead of thinking about extinguishing the life of Melvin Hodges, think about extinguishing any enragement or revenge feelings or emotions that you have that weremay have been attempted to have been made, enraged in you, with this production for completely close-ups [sic], attempted to fan that flame.
"The Court: Let me talk to both of you lawyers up here just a minute.
"(Whereupon, a bench discussion was had outside the hearing of the jury.)
"The Court: Based on this Fletcher [v. State, 621 So.2d 1010 (Ala.Crim.App. 1993),] case, I amI am going to charge on intoxication and manslaughter. I wanted you to know that during the coursebefore you finish your argument. I am going to do it out of an abundance of caution, and I will explain it when the jury goes out.
"Mr. Abbett: That's fine."
(R. 1135-37.)
Defense counsel did not object at trial on grounds that the trial court interrupted Hodges during closing and told him that he was going to give an instruction on intoxication and manslaughter. Therefore, we review this claim only for plain error. Rule 45A, Ala.R.App.P.
Hodges argues that the timing of the interruption, after the State had objected to an argument of defense counsel and after the trial court had instructed the jurors that the arguments of counsel were not evidence, undermined the defense's position in the eyes of the jurors. We have looked at the entire closing argument and the court's statements to defense counsel and find no evidence that any prejudice to the defendant occurred because of the court's actions. Also, the trial court instructed the jury that any statements it made were not evidence and were not to be considered by them.

XIV.
In Issue I of his appellate brief, Hodges argues that the trial court erred in failing to give instructions on certain lesser-included offenses.
As we stated in Johnson v. State, 820 So.2d 842 (Ala.Crim.App.2000), aff'd, 820 So.2d 883 (Ala.2001):
"When reviewing a trial court's jury instructions, we must view them as a whole, not in bits and pieces, and as a reasonable juror would have interpreted them. Ingram v. State, 779 So.2d 1225 (Ala.Cr.App.1999). `The absence of an objection in a case involving the death penalty does not preclude review of the issue; however, the defendant's failure to object does weigh against his claim of prejudice.' Ex parte Boyd, 715 So.2d 852 (Ala.), cert. denied, 525 U.S. 968, 119 S.Ct. 416, 142 L.Ed.2d 338 (1998)."
820 So.2d at 874.
"A trial court has broad discretion in formulating its jury instructions, provided those instructions accurately reflect the law and the facts of the case." Williams *925 v. State, 710 So.2d 1276, 1305 (Ala.Crim. App.1996), aff'd, 710 So.2d 1350 (Ala.1997), cert. denied, 524 U.S. 929, 118 S.Ct. 2325, 141 L.Ed.2d 699 (1998).

A.
Hodges argues that the trial court erred in failing to give a jury instruction on the lesser-included offense of robbery in the first degree. Initially, we note that defense counsel did not object after the trial court gave its jury instructions. Instead, defense counsel announced that it was satisfied with the instructions. (R. 1168.) Therefore we are limited to only a plain error analysis. Rule 45A, Ala. R.App.P.[6]
"Anyone charged with a greater offense has the right to have a charge on any lesser offenses when there is a reasonable theory based upon the evidence to support the accused's position. Anderson v. State, 507 So.2d 580, 582 (Ala.Cr.App.1987). The trial court may refuse to charge on such a lesser included offense only when: (1) it is clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offense; or (2) the charge would tend to mislead or confuse the jury. Holladay v. State, 549 So.2d 122 (Ala.Cr.App.1988)."
Turner v. State, 708 So.2d 232, 234 (Ala. Crim.App.1997).
Even under Hodges's rendition of the circumstances surrounding the events of January 5, 1998, there was no evidence that only a robbery occurred. Hodges testified that he planned the robbery. He said that he enlisted Craig Hicks, Greg Holstick, and Marlo Murph. Hodges testified that, on the night of the intended robbery, Hicks did not meet them at the appointed time and place, and they had to revise their plans. Hodges said that he planned to be at his apartment so that he would not be implicated in the robbery. He said that after about one hour Greg Holstick returned and said that they had to get rid of Seaton because she knew them. (Hodges had previously introduced Holstick to Seaton.) There was absolutely no evidence presented indicating that the murder did not occur during the course of, or in connection with the robbery. There was no evidence indicating that the two crimes were separate and distinct actions. "The appellant was also not entitled to have the jury charged on the lesser included offense of robbery. Because there was a killing in the course of and in furtherance of a robbery, `[i]t is clear ... that the appellant is at least guilty of felony murder.' Kinder v. State, 515 So.2d 55, 72 (Ala.Cr.App.1986)." Tucker v. State, 650 So.2d 534, 536 (Ala. Crim.App.1994).
The trial court did give an instruction on felony murder that was supported by Hodges's rendition of the events that occurred on January 4, 1998. The jury found Hodges guilty of the greater offense of capital murder. The trial court committed no plain error in failing to charge the jury on robbery as a lesser-included offense of robbery/murder.

B.
Hodges also argues that the trial court erred in its late notification that it intended to instruct the jury on manslaughter and intoxication. The record reflects that the jury was instructed on manslaughter and on intoxication as negating a specific intent. However, during the charge conference the trial court indicated that it did not intend to charge on manslaughter. *926 Shortly thereafter, in the middle of closing arguments, the trial court informed defense counsel that it did intend to charge on manslaughter and intoxication. There was no objection to the trial court's late disclosure of its decision to instruct on manslaughter and intoxication, so we review this issue for plain error. Rule 45A, Ala.R.App.P.
Hodges seems to argue that he was prejudiced by the trial court's late disclosure of its decision to charge on manslaughter and intoxication. However, this disclosure came after Hodges himself testified that he had nothing to do with the murder because he was not present when it occurred. Hodges's whole defense was that he planned the robbery but that he had nothing to do with the murder and that he was not present when the robbery or the murder occurred. Defense counsel did not argue that Hodges was so intoxicated he could not form an intent. In fact, such an argument would have been problematic given Hodges's defense that he was not present when Seaton was killed and that he had nothing to do with the murder. Moreover, at the time that the trial court announced that it intended to instruct on manslaughter, defense counsel could have requested a short recess; it did not. Neither did it choose to argue this point at the penalty phase. The defense's whole strategy, at the penalty phase, consisted of arguing that Hodges had had a traumatic childhood and that the jury should spare his life. Based on the record before us there is no plain error here.

XV.
In Issue XVII, Hodges argues that the State's evidence failed to establish a prima facie case of robbery/murder. Specifically, he argues in brief that the State presented no "hard evidence" that Hodges was involved in Seaton's murder.
We have repeatedly held that "[a] trial court's denial of a motion for a judgment of acquittal must be reviewed by determining whether there existed legal evidence before the jury, at the time the motion was made, from which the jury by fair inference could have found the defendant guilty beyond a reasonable doubt." Broadnax v. State, 825 So.2d 134, 191 (Ala. Crim.App.2000) (citation omitted).
Hodges's argument on this issue disregards much of the evidence presented in this case. Hodges himself testified that he planned the robbery. Hodges's codefendant, Marlo Murph, testified that Hodges ran over Seaton several times with her own vehicle and that he disposed of Hodges's clothes because they were covered in blood. Murph led police to where he had disposed of Hodges's clothes. The clothes were identified as belonging to Hodges. At the time of Hodges's arrest he had blood on his watch and ring. Also, Hodges's aunt testified that the day after the robbery/murder Hodges confessed to her that he had robbed and killed Seaton.
There was more than sufficient evidence indicating Hodges's participation in the robbery/murder to submit the case to the jury. The trial court correctly denied the motion for a judgment of acquittal.

XVI.
In Issue XIV, Hodges argues that he was denied his right to be present at all stages of the trial when the hearing on his motion for a new trial was held in his absence.
The record reflects that at the motion hearing no testimony was received into evidence; only the brief arguments of counsel on a few issues were presented. Defense counsel concentrated on three points of lawthat the trial court erred in not instructing the jury on the lesser-included *927 offense of robbery, that the trial court erred in finding as an aggravating circumstance that the murder was committed for pecuniary gain, and that Alabama's statutory provision allowing a circuit judge to override the recommendation of a jury in a death-penalty case is unconstitutional. No issues of fact were presented to the trial court at this hearing. The State did not present any argument at the hearing.
In Jackson v. State, 791 So.2d 979 (Ala.Crim.App.2000), cert. denied, 791 So.2d 1043 (Ala.2000), cert. denied, 532 U.S. 934, 121 S.Ct. 1387, 149 L.Ed.2d 311 (2001), we addressed whether the defendant's absence during the State's use of its first six peremptory strikes amounted to reversible error. We held that there was no prejudice to the defendant, even though striking the jury was a critical stage of the proceedings. We stated:
"Rule 9.1(a), Ala.R.Crim.P., provides that a `defendant has the right to be present at the arraignment and at every stage of the trial, including the selection of the jury, the giving of additional instructions pursuant to Rule 21, the return of the verdict, and sentencing.' At the time of Jackson's trial, a capital defendant could not waive his right to be present. See Rule 9.1(b)(2)(i), Ala. R.Crim.P. However, Alabama courts held `that if a capital defendant is absent from noncritical stages of trial and if his presence would not have benefitted his defense, no error occurs.' Burgess v. State, 723 So.2d 742, 760 (Ala.Cr.App. 1997), aff'd, 723 So.2d 770 (Ala. 1998), cert. denied, 526 U.S. 1052, 119 S.Ct. 1360, 143 L.Ed.2d 521 (1999), citing Harris v. State, 632 So.2d 503, 510-12 (Ala.Cr.App.1992), aff'd, 632 So.2d 543 (Ala.1993), aff'd, 513 U.S. 504, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995).
"`"Because the basis of the right to be present at trial is the constitutional mandate [that one be provided] an opportunity to defend oneself, due process requires that the defendant be personally present `to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.'"' Burgess v. State, 827 So.2d 134, 186 (Ala.Cr.App.1998), quoting Finney v. Zant, 709 F.2d 643, 646 (11th Cir.1983), quoting, in turn, Snyder v. Massachusetts, 291 U.S. 97, 107-8, 54 S.Ct. 330, 78 L.Ed. 674 (1934). In Harris, supra, this court stated:
"`"A defendant's right to be present at all stages of a criminal trial derives from the confrontation clause of the Sixth Amendment and the due process clause of the Fourteenth Amendment. Illinois v. Allen, 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353 (1970); Hopt v. Utah, 110 U.S. 574, 579, 4 S.Ct. 202, 204, 28 L.Ed. 262 (1884). This right extends to all hearings that are an essential part of the triali.e., to all proceedings at which the defendant's presence `has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.' Snyder v. Massachusetts, 291 U.S. 97, 105-06, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934). Compare Hopt v. Utah, supra (defendant has right to be present at empaneling of jurors); Bartone v. United States, 375 U.S. 52, 84 S.Ct. 21, 11 L.Ed.2d 11 (1963)(court cannot impose sentence in absence of defendant); with United States v. Howell, 514 F.2d 710 (5th Cir.1975); cert. denied, 429 U.S. 838, 97 S.Ct. 109, 50 L.Ed.2d 105 (1976)(no right to be present at in camera conference concerning attempted bribe of juror); United States v. Gradsky, 434 F.2d 880 (5th Cir.1970), cert. denied, 409 U.S. 894, *928 93 S.Ct. 203, 34 L.Ed.2d 151 (1972)(right to presence does not extend to evidentiary hearing on suppression motion.)"'
"632 So.2d at 511, quoting Proffitt v. Wainwright, 685 F.2d 1227 (11th Cir. 1982), cert. denied, 464 U.S. 1002, 104 S.Ct. 508, 78 L.Ed.2d 697 (1983)."
791 So.2d at 1004 (footnote omitted).
The Alabama Supreme Court has recognized that a hearing on a motion for new trial is a critical stage of the proceedings. See Ex parte Belue, 727 So.2d 785 (Ala.1998) (Belue's constitutional rights were violated when he was not allowed to be present at the motion-for-new-trial hearing at which testimony adverse to him was received into evidence). However, we find this case to be similar to the situation presented to the Alabama Supreme Court in Ex parte DeBruce, 651 So.2d 624 (Ala. 1994). In DeBruce, the Supreme Court held that DeBruce's rights had not been violated, because no testimony was received at the hearing and only issues of law were involved. We hold, as did the Alabama Supreme Court in Ex parte DeBruce, that none of Hodges's rights were violated by his absence from the hearing on the motion for a new trial, and that there was no showing of any prejudice. See also Dobyne v. State, 672 So.2d 1319, 1330 (Ala.Crim.App.)("[T]he appellant's absence from the [pretrial] hearing did not violate his constitutional rights. The state presented no witnesses at the hearing. The appellant has not shown how he was prejudiced by his absence from the pretrial motion hearing."), aff'd on return to remand, 672 So.2d 1353 (Ala.Crim.App. 1994), aff'd, 672 So.2d 1354 (Ala.1995), cert. denied, 517 U.S. 1169, 116 S.Ct. 1571, 134 L.Ed.2d 670 (1996).
Based on the foregoing, we hold that Hodges is not entitled to relief on this issue.

Penalty-Phase Issues

XVII.
In Issue II of his appellate brief, Hodges argues that he was prevented from presenting mitigating evidence. Specifically, he argues that his mother was not allowed to testify that Hodges offered to plead guilty in exchange for a sentence of life imprisonment without parole. However, as he states in his brief, "The court called a bench conference, at which time defense counsel offered to go get legal authority from his file to support the contention that a plea agreement qualifies as mitigating circumstance. The state then withdrew its objection. (R. 1224.)" (Appellant's brief at p. 14.) This evidence was introduced during the penalty phase, in the testimony of Hodges's mother. (R. 1225.)
Hodges also argues that the State attempted to limit the testimony of Hodges's mother concerning his childhood. We addressed this issue in our original opinion and stated that there was no reversible error because Hodges's mother was allowed to present the circumstances of his childhood. Hodges v. State, 856 So.2d 875, 892.
Moreover, we have reviewed the record and have found no evidence that the trial court denied Hodges the opportunity to present relevant mitigating evidence.

XVIII.
In Issue VII of his brief, Hodges argues that the trial court erred in failing to instruct the jury in the penalty phase on the definition of kidnapping. Hodges was indicted for committing a murder during the course of a robbery. However, in the penalty phase the State relied on two aggravating circumstancesthat the murder was committed during a robbery and that the murder was committed during a kidnappingin its instructions. The trial *929 court did not instruct the jury on the definition of kidnapping at the penalty phase.
Initially, we observe that there was no objection to the trial court's failure to define kidnapping. Therefore, we are limited to a plain-error review. Rule 45A, Ala.R.App.P.
There was no prejudice to Hodges because of the court's failure to define kidnapping during the penalty phase jury instructions, because the jury recommended that Hodges be sentenced to life imprisonment without the possibility of parole. Thus, any failure to give this jury instruction was at most harmless beyond a reasonable doubt. Waldrop v. State, [Ms. CR-98-2316, Dec. 1, 2000] ___ So.2d ___, ___ (Ala.Crim.App.2000).

Trial Court's Sentencing Order

XIX.
We previously remanded this case for the trial court to correct its sentencing order to omit from its consideration an improperly applied aggravating circumstance, to make specific findings about the aggravating and the mitigating circumstances, and to state the reasons why it gave the jury's recommendation the consideration that it gave it.[7] 856 So.2d at 894.
The trial court has complied with our directions. It has made findings concerning the aggravating circumstances and the mitigating circumstances, weighed them, and again fixed Hodges's sentence at death. The parties submitted supplemental briefs on return to remand.
Hodges was indicted and convicted of killing Beth Seaton during the course of a robbery. The jury, by a vote of 8 to 4, recommended that Hodges be sentenced to life imprisonment without the possibility of parole. The trial court did not follow the jury's recommendation; it sentenced Hodges to death by electrocution. See § 13A-5-47(e), Ala.Code 1975.
In his brief on return to remand, Hodges argues that the trial court misstated a fact in its amended sentencing order when it found that there was human blood on the jewelry that Hodges was wearing when he was arrested. He contends that this misstatement undermined his defense at trial. Initially, we observe that Hodges failed to object to the alleged misstatement in the trial court. Therefore, we are limited to plain-error review. Rule 45A, Ala. R.App.P.
The State correctly notes that there is no way the trial court's finding in its sentencing order could affect Hodges's defense at the already concluded trial. Moreover, the finding that human blood was on the jewelry is a reasonable inference from the evidence presented at trial. Michael Hitchcock, a forensic biologist with the Alabama Department of Forensic Sciences, testified that there was blood on the jewelry, but there was not a sufficient amount to subject to DNA testing. Even if this was an incorrect statement, we can conceive of no prejudice to Hodges. Testimony was presented that the clothes that Hodges was wearing at the time of the robbery/murder had blood that matched Seaton's DNA.
In a one-paragraph argument in his brief to this Court, Hodges contends that his sentence was imposed pursuant to a pattern of racial bias. However, he cites no basis for this assertion. Our review of the record fails to support this contention. There is absolutely no evidence that Hodges's sentence was imposed under the influence of passion, prejudice, or any other *930 arbitrary factor. § 13A-5-53(b)(1), Ala. Code 1975.
The trial court found that the aggravating circumstances outweighed the mitigating circumstances. The trial court found, as aggravating circumstances, that the murder was committed during a robbery and during a kidnapping, and that the murder was especially heinous, atrocious, or cruel as compared to other capital offenses.[8] The trial court stated:
"The Court finds, from the evidence, as follows: The victim's nude body was found beside a rural road in Macon County. Medical and other testimony revealed that she had been beaten and choked after being abducted from the location of the robbery in her van. Blood matching her type was found inside the van and on clothing of the Defendant. The accomplice testified that she pleaded for her life as she was being driven around naked inside the van. It is unclear as to how long she was being driven around naked and how long she was beaten and choked before finally being dumped on the side of the road. In the view of this Court, that was extraordinarily cruel and likely generated great fear and terror in her during her last hours on this earth. She was then dumped on the ground and run over repeatedly with her own van. Blood matching her type was found on the underside of the vehicle."
(May 2, 2001, Amended Sentencing Order.)
In Ex parte Kyzer, 399 So.2d 330, 334 (Ala.1981), the Alabama Supreme Court held that a murder is especially heinous, atrocious, or cruel if the murder is "unnecessarily torturous to the victim." We have stated, "Factors indicative of an offense's being `especially heinous, atrocious, or cruel' include, but are not limited to, whether the infliction on the victim of physical violence was beyond that necessary to cause death, whether a victim experienced appreciable suffering after a swift assault that ultimately resulted in death, whether the victim suffered psychological torture." Clark v. State, [Ms. CR-99-1062, December 1, 2000] ___ So.2d ___, ___ (Ala.Crim.App.2000) (citation omitted).
Hodges argues that the "especially heinous, atrocious, or cruel" aggravating circumstance was unconstitutionally applied in this case. We disagree.
The Alabama Supreme Court in Ex parte Clark, 728 So.2d 1126 (Ala.1998), stated the following about this aggravating circumstance:
"In Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), the Supreme Court of the United States held that the application of certain state death penalty statutes violated the Eight Amendment to the United States Constitution as applied to the states through the Due Process Clause of the Fourteenth Amendment. The Supreme Court held that those statutes' lack of principled standards to prevent the sentencing authority from arbitrarily and capriciously imposing capital punishment rendered the application of the sentencing scheme constitutionally infirm. E.g. id. at 310, 92 S.Ct. 2726 (Stewart, J., concurring); id. at 311, 92 S.Ct. 2726 (White, J., concurring).

*931 "Since Furman, many states have revised their death penalty statutes to require that the sentencing authority consider aggravating and mitigating circumstances, thus limiting the discretion of the sentencing authority. See Maynard v. Cartwright, 486 U.S. 356, 362, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). The Supreme Court's post-Furman cases make it clear that to survive Eighth Amendment scrutiny, a factor used as an aggravating circumstance in a capital punishment statute must provide a `principled way to distinguish' cases in which the death penalty is appropriate from cases in which it is not. See, e.g., Godfrey v. Georgia, 446 U.S. 420, 433, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980). The Supreme Court has held that the `especially heinous, atrocious, or cruel' aggravating circumstance provides such a principled distinction only where the state appellate courts employ a consistent and narrow interpretation of that circumstance to channel the discretion of the sentencer. See Cartwright, 486 U.S. at 365-66, 108 S.Ct. 1853, 100 L.Ed.2d 372 (upholding the Oklahoma Court of Criminal Appeals' interpretation of the `especially heinous, atrocious, or cruel' aggravating circumstance to require, before a death sentence is imposed, a finding that the victim was tortured or was caused to suffer serious physical abuse).
"In Lindsey v. Thigpen, 875 F.2d 1509 (11th Cir.1989), the United States Court of Appeals for the Eleventh Circuit upheld this Court's application of the `especially heinous, atrocious, or cruel' aggravating circumstance because this Court's application of it provided a `principled way to distinguish' cases in which the death penalty is appropriately imposed from cases in which it is not. Id. at 1513, 1515 (upholding our application of Ala.Code 1975, § 13A-5-49(8) and quoting Godfrey, 446 U.S. at 431, 100 S.Ct. 1759, 64 L.Ed.2d 398). The Eleventh Circuit emphasized that the Alabama appellate courts' interpretation of § 13A-5-49(8) passed muster under the Eighth Amendment because this Court and the Court of Criminal Appeals had consistently defined `especially heinous, atrocious or cruel' to include only `those conscienceless or pitiless homicides which are unnecessarily torturous to the victim.' Lindsey v. Thigpen, at 1514 (quoting Ex parte Kyzer, 399 So.2d 330, 334 (Ala.1981)) (emphasis added)."
Ex parte Clark, 728 So.2d at 1137-38 (footnotes omitted).
Here, the facts support the trial court's finding that the murder was especially heinous, atrocious, or cruel as compared to other capital murders. See Ex parte Hutcherson, 727 So.2d 861 (Ala.1998) (murder especially heinous, atrocious, or cruel when victim was beaten to death), cert. denied, 527 U.S. 1024, 119 S.Ct. 2371, 144 L.Ed.2d 775 (1999). The evidence demonstrated that Seaton pleaded for her life for some time before she was beaten with fists and a pistol and was ultimately run over with her own vehicle. Murph testified that she even took off her clothes and offered to have sex with Hodges and Murph if they would not kill her. The evidence further demonstrated that Seaton had been physically and psychologically tortured. "The torture element of the circumstance may involve both physical and psychological torture." Wilson v. State, 777 So.2d 856, 881 (Ala.Crim.App.1999), aff'd, 777 So.2d 935 (Ala.2000), cert. denied, 531 U.S. 1097, 121 S.Ct. 826, 148 L.Ed.2d 709 (2001). There was sufficient evidence to show that Seaton's murder was *932 "especially heinous, atrocious, or cruel" as compared to other capital murders.
The trial court found no statutory mitigating evidence present. Hodges argues that the trial court erred in failing to find as statutory mitigating evidence that Hodges could not conform his conduct to the requirements of the law. § 13A-5-51(6). He contends that there was evidence that he had been drinking at the time of the robbery/murder. The trial court stated the following:
"The capacity of the Defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was not impaired. There was evidence that Defendant and Co-Defendant were drinking, but no evidence they were under the influence of alcohol or drugs at the time of the commission of this offense, nor otherwise physically or mentally impaired or affected."
(May 2, 2001, Amended Sentencing Order.)
The trial court's finding is supported by the record. There was absolutely no evidence presented that Hodges was so drunk he was unable to appreciate the criminality of his conduct. Evidence of alcohol consumption, alone, does not indicate that an individual was so intoxicated that he was unable to form an intent. See Windsor v. State, 683 So.2d 1027, 1037 (Ala.Crim.App.1994), aff'd, 683 So.2d 1042 (Ala.1996), cert. denied, 520 U.S. 1171, 117 S.Ct. 1438, 137 L.Ed.2d 545 (1997).
The trial court stated the following about the nonstatutory mitigating evidence:
"Testimony was given by Defendant's mother as to a difficult family history during Defendant's childhood. She testified that Defendant's father abused her. However, she left Defendant's father when Defendant was two years old. She remarried a man who was verbally abusive to the family but left him when Defendant was seven years old. At the time of this offense, Defendant was 27 years old. In the opinion of this Court, this testimony is entitled to little, if any, weight."
(May 2, 2001, Amended Sentencing Order.)
Hodges argues that the trial court erred in failing to find certain nonstatutory mitigating evidence. We have often stated that "`[a]lthough the trial court is required to consider all mitigating circumstances, the decision of whether a particular mitigating circumstance is proven and the weight to be given it rests with the sentencer.'" Boyd v. State, 715 So.2d 825, 840 (Ala.Crim.App.1997), aff'd, 715 So.2d 852 (Ala.1998), quoting Williams v. State, 710 So.2d 1276, 1347 (Ala.Crim.App. 1996), aff'd, 710 So.2d 1350 (Ala.1997), cert. denied, 524 U.S. 929, 118 S.Ct. 2325, 141 L.Ed.2d 699 (1998). Hodges argues that the trial court erred in not considering as mitigating that his codefendant received a sentence of life imprisonment without parole. We have stated that a trial court is not bound to find as a mitigating circumstance that a codefendant received a lesser sentence than death. See Johnson v. State, 820 So.2d 842 (Ala.Crim.App.2000), aff'd, 820 So.2d 883 (Ala.2001).
The trial court weighed the aggravating circumstances and the mitigating circumstances and elected not to follow the jury's recommendation. The trial court explained its decision:
"It is the opinion of this Court that, given the facts of this case, that the advisory verdict of the jury should not be followed.
"This was an especially cruel and torturous murder. The victim, after being abducted at gunpoint by the two perpetrators, cooperated by giving access to the building and safe at the Golden Corral *933 Restaurant. They got the money they sought without resistance from the victim.
"It would have been humane for them to release the victim at that point. Instead, they continued to hold her against her will. She was driven around, naked, and beaten and choked as she pled for her life. It would be reasonable to assume that she was conscious and terrified as the torture continued over an extended period of time.
"She was then dumped on the ground and run over repeatedly. It is unclear whether she was still alive at the time this was done but that conclusion could be drawn, thus magnifying the terror and anguish inflicted on the victim by the Defendant.
"While this Court has given great deference to the verdict and sentence recommendations of this jury, still the depravity of this Defendant, the callousness of his acts toward the victim (as recounted above), and comparing his acts with similar cases, it is the opinion of this Court that a greater measurement of punishment is proper than life without parole."
(May 2, 2001, Amended Sentencing Order.)
Hodges argues that the trial court's reasons for overriding the jury's verdict are not sufficient to comply with Ex parte Taylor, 808 So.2d 1215 (Ala. 2001). The Alabama Supreme Court in Ex parte Taylor held that a judge must make specific findings as to his reasons for "giving the jury's recommendation the consideration he gave it." The court stated:
"Under Alabama's capital-sentencing procedure, the trial judge must make specific written findings regarding the existence or nonexistence of each aggravating circumstance and each mitigating circumstance offered by the parties. § 13A-5-47(d), Ala.Code 1975. In making these findings, the trial judge must consider a jury's recommendation of life imprisonment without parole. See § 13A-5-47(e), Ala.Code 1975 (`in [weighing the aggravating and mitigating circumstances] the trial court shall consider the recommendation of the jury contained in its advisory verdict'). Construing subsection (e) together with subsection (d), we conclude that the trial judge must state specific reasons for giving the jury's recommendation the consideration he gave it."
808 So.2d at 1218 (footnote omitted).
The trial court's reasons for overriding the jury's recommendation in this case are sufficient to comply with the dictates of Ex parte Taylor.
Hodges argues that § 13A-5-47(d), which allows for judicial override of a recommended sentence of life imprisonment without parole, is unconstitutional. Specifically, he argues that it provides no standards for a trial court and is facially unconstitutional. The Alabama Supreme Court recently addressed this very issue in Ex parte Taylor, supra. That Court stated:
"The Supreme Court has held that the `danger of an arbitrary and capricious death penalty could be met "by a carefully drafted statute that ensures that the sentencing authority is given adequate information and guidance."` Eddings v. Oklahoma, 455 U.S. 104, 111, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) (quoting Gregg v. Georgia, 428 U.S. 153, 195, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)). Section 13A-5-47, Ala.Code 1975, provides that the trial judge must order and receive a detailed, written, pre-sentence investigation report; must permit the parties to present arguments concerning aggravating and mitigating circumstances and the proper sentence to be *934 imposed; and must enter specific written findings regarding the existence or nonexistence of each and every aggravating circumstance and mitigating circumstance offered by the parties. § 13A-5-47(b), (d), Ala.Code 1975. Section 13A-5-47(e) further provides that the trial judge must `determine whether the aggravating circumstances it finds to exist outweigh the mitigating circumstances it finds to exist.' In weighing the aggravating and mitigating circumstances, `the trial court shall consider the recommendation of the jury contained in its advisory verdict.' Id. We conclude that this capital-sentencing procedure ensures that the trial judge is given adequate information and sufficient guidance in deciding whether to support or to reject a jury's recommended sentence. See Eddings v. Oklahoma, 455 U.S. at 111, 102 S.Ct. 869, 71 L.Ed.2d 1.
"The Supreme Court held in Harris [v. Alabama, 513 U.S. 504, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995)] that the United States Constitution `permits the trial judge, acting alone, to impose a capital sentence' and `is ... not offended when a State further requires the sentencing judge to consider a jury's recommendation and trusts the judge to give it the proper weight.' 513 U.S. at 515, 115 S.Ct. 1031, 130 L.Ed.2d 1004. We find this holding applicable to Taylor's particular Fourteenth Amendment claim.
"This Court held in Ex parte Jones, 456 So.2d 380 (Ala.1984), that the Constitution of the United States does not require the `[adoption of] specific limitations on the trial court's power to override the jury's advisory verdict' and that Alabama's capital-sentencing procedure provides sufficient protection for capital defendants because [t]he whole catalog of aggravating circumstances must outweigh mitigating circumstances before a trial court may opt to impose the death penalty by overriding the jury's recommendation' of life imprisonment. 456 So.2d at 382. Under Alabama's capital-sentencing procedure, the trial judge must make specific written findings regarding the existence or nonexistence of each aggravating circumstance and each mitigating circumstance offered by the parties. § 13A-5-47(d), Ala.Code 1975. In making these findings, the trial judge must consider a jury's recommendation of life imprisonment without parole. See § 13A-5-47(e), Ala.Code 1975 (`in [weighing the aggravating and mitigating circumstances] the trial court shall consider the recommendation of the jury contained in its advisory verdict'). Construing subsection (e), together with subsection (d), we conclude that the trial judge must state specific reasons for giving the jury's recommendation the consideration he gave it. McCausland v. Tide-Mayflower Moving & Storage, 499 So.2d 1378, 1382 (Ala.1986) (stating that subsections of a statute `should be construed together to ascertain the meaning and intent of each'). Therefore, we hold that Alabama's capital-sentencing procedure does not result in the imposition of the death sentence in an arbitrary and capricious manner in violation of the Fourteenth Amendment."
Ex parte Taylor, 808 So.2d at 1218-19 (footnote omitted).
Hodges also argues that § 13A-5-47(d) violates the Due Process Clause based on the holding of Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). However, the Supreme Court in Apprendi specifically excluded state capital sentencing schemes from its holding. 530 U.S. at 496, 120 S.Ct. 2348. Moreover, the Alabama Supreme Court in Ex parte Taylor held that § 13A-5-47(d) *935 does not violate the Due Process Clause. Ex parte Taylor, 808 So.2d at 1218.
Hodges also argues that 13A-5-47(e) is unconstitutional because it violates § 11, Ala. Const. 1901. The Alabama Supreme Court has specifically held that this section does not violate § 11, Ala. Const. 1901. See Ex parte Apicella, 809 So.2d 865 (Ala. 2001).
Hodges argues that the trial court erred in refusing to consider whether his sentence was disproportionate to sentences imposed in similar cases. He cites § 13A-5-53(b)(3) and Ex parte Hays, 518 So.2d 768 (Ala.1986), in support of this assertion. Section 13A-5-53(b)(3) provides that this court must address whether Hodges's sentence is disproportionate or excessive when compared to penalties in similar cases. There is no statutory obligation on a trial court to review the proportionality of a death sentence. Section 13A-5-53(b) states:
"In determining whether death was the proper sentence in the case the Alabama Court of Criminal Appeals, subject to review by the Alabama Supreme Court, shall determine: ... Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant."
Section 13A-5-47, which governs the sentencing determination by the trial court, does not impose the requirement that the trial court consider the proportionality of a capital defendant's sentence.
Section 13A-5-53(b)(2), Ala.Code 1975, provides that we must independently weigh the aggravating and the mitigating circumstances to determine the propriety of Hodges's sentence. After an independent weighing, we are convinced, as was the trial court, that death is the appropriate sentence.
Pursuant to the obligation imposed by § 13A-5-53(b), we find that Hodges's sentence is neither disproportionate or excessive to the sentences imposed in other robbery/murders. As this Court recently stated in Reeves v. State, 807 So.2d 18 (Ala.Crim.App.2000):
"The appellant was convicted of the offense of murder committed during the course of a robbery. This offense is defined by statute as a capital offense. See § 13A-5-40(a)(2), Ala.Code 1975. We take judicial notice that similar crimes have been punished capitally throughout the state. E.g., Hardy v. State, 804 So.2d 247 (Ala.Crim.App. 1999); Clemons v. State, 720 So.2d 961 (Ala.Crim.App.1996), aff'd, 720 So.2d 985 (Ala.1998), cert. denied, 525 U.S. 1124, 119 S.Ct. 907, 142 L.Ed.2d 906 (1999); Williams v. State, 710 So.2d 1276 (Ala. Crim.App.1996), aff'd, 710 So.2d 1350 (Ala.1997), cert. denied, 524 U.S. 929, 118 S.Ct. 2325, 141 L.Ed.2d 699 (1998); McNair v. State, 706 So.2d 828 (Ala. Crim.App.1997), cert. denied, 523 U.S. 1064, 118 S.Ct. 1396, 140 L.Ed.2d 654 (1998); Henderson v. State, 583 So.2d 276 (Ala.Crim.App.1990), aff'd, 583 So.2d 305 (Ala.1991), cert. denied, 503 U.S. 908, 112 S.Ct. 1268, 117 L.Ed.2d 496 (1992); Kuenzel v. State, 577 So.2d 474 (Ala.Crim.App.1990), aff'd, 577 So.2d 531 (Ala.), cert. denied, 502 U.S. 886, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991); Brownlee v. State, 545 So.2d 151 (Ala. Crim.App.1988), aff'd, 545 So.2d 166 (Ala.), cert. denied, 493 U.S. 874, 110 S.Ct. 208, 107 L.Ed.2d 161 (1989); Hallford v. State, 548 So.2d 526 (Ala.Crim. App.1988), aff'd, 548 So.2d 547 (Ala.), cert. denied, 493 U.S. 945, 110 S.Ct. 354, 107 L.Ed.2d 342 (1989); Davis v. State, 536 So.2d 110 (Ala.Crim.App.1987), aff'd, 536 So.2d 118 (Ala.1988), cert. denied, 490 U.S. 1028, 109 S.Ct. 1766, 104 *936 L.Ed.2d 201 (1989); and Cochran v. State, 500 So.2d 1161 (Ala.Crim.App. 1984), aff'd in part, rev'd in part, 500 So.2d 1179 (Ala.1985), aff'd on return to remand, 500 So.2d 1188 (Ala.Crim.App.), aff'd, 500 So.2d 1064 (Ala.1986), cert. denied, 481 U.S. 1033, 107 S.Ct. 1965, 95 L.Ed.2d 537 (1987). In fact, two-thirds of Alabama's death sentences have been imposed on defendants convicted of murder made capital because it was committed during the commission of a robbery. McNair, supra."
Reeves v. State, 807 So.2d at 50-51.
Last, we have searched the record for any error that may have adversely affected Hodges's substantial rights and have found none. Rule 45A, Ala.R.App.P.
Hodges's conviction and sentence to death by electrocution are due to be, and are hereby, affirmed.
AFFIRMED.
McMILLAN, P.J., and BASCHAB, SHAW, and WISE, JJ., concur.
NOTES
[1] Alabama is one of four states that allow a trial court to sentence a convicted capital offender to death after a jury has recommended a sentence of life imprisonment without parole. Delaware, Florida, and Indiana have similar statutory provisions. See Harris v. Alabama, 513 U.S. 504, 516, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995).
[2] As § 13A-5-45(e) states: "[A]ny aggravating circumstance which the verdict convicting the defendant establishes was proven beyond a reasonable doubt at trial shall be considered as proven beyond a reasonable doubt for purposes of the sentence hearing."
[3] Our neighboring states of Florida and Mississippi have held likewise. See Robertson v. State, 611 So.2d 1228 (Fla.1993), and Willie v. State, 585 So.2d 660 (Miss.1991).
[4] Mrs. Hodges was repeatedly interrupted during her testimony by the prosecution and the trial court. The trial court attempted to limit her discussion about the number of moves the family had made when Hodges was growing up. We agree with defense counsel's characterization of this evidenceit was admissible to show the instability of Hodges's home environment. However, this evidence was introduced during her testimony; thus, there is no reversible error. Rule 45A, Ala. R.App.P.
[1] Murph testified after entering into a plea agreement that recommended that he receive a sentence of life imprisonment without the possibility of parole. (R. 1017.)
[2] The duties of a grand jury foreperson in Alabama are contained in Rule 12.5, Ala. R.Crim.P. This rule states, in pertinent part:

"(b) DUTIES OF FOREMAN. It is the duty of the foreman to:
"(1) Preside over the grand jury proceedings;
"(2) Issue or cause to be issued subpoenas and subpoenas duces tecum for any witnesses whom the grand jury may require to give evidence, and if witnesses so summoned fail to appear, to endorse the returned subpoenas as defaulted;
"(3) Perform the following functions with respect to witnesses appearing before the grand jury;
"(i) Swear witnesses before the grand jury or cause them to be sworn by the district attorney or assistant district attorney; and
"(ii) Maintain a list of all witnesses summoned and in attendance before the grand jury during each session;
"(4) Endorse any indictment returned by the grand jury `A True Bill' and sign his name thereto; and
"(5) Submit a written report of the proceedings of the grand jury to the court."
[3] Likins is currently representing Hodges on appeal.
[4] The original motion requested $3,500. This motion was amended to request $7,000.
[5] Supp. R. refers to the supplemental record filed in this Court on April 7, 2000.
[6] Hodges raised this issue for the first time in his motion for a new trial. Because the issue was not raised during the trial, it was untimely. Rule 21.3, Ala.R.Crim.P.
[7] The fact that we remanded this case for the trial court to correct its sentencing order renders the majority of the allegations in Part IV of Hodges's brief moot.
[8] Hodges argues that the trial court erred in counting robbery as both an element of the capital offense and as an aggravating circumstance. As we stated in Ferguson v. State, 814 So.2d 925 (Ala.Crim.App.2000), "This court and the Alabama Supreme Court have repeatedly held that using an element of capital murder as an aggravating circumstance is constitutionally permissible and does not violate a defendant's right to be free from double jeopardy." 814 So.2d at 956, aff'd, 814 So.2d 970 (Ala.2001).